(167 App. Div. 152)

UNITED STATES TRUST CO. OF NEW YORK v. TERRY et al.

(Supreme Court, Appellate Division, Second Department. April 23, 1915.)

1. WILLS &⇒527—CONSTRUCTION—RESIDUE.

A testator made identical bequests of corporate stock to two different trustees, to pay the interest and income to his wife for life; directing that at her death each of his brothers and sisters then living should, in addition to the sums bequeathed them by the third paragraph of his will, receive $2,500, that each of his nieces and nephews, the children of such brothers and sisters, should receive the further sum of $1,000, and that in case of the decease of any such legatee the issue of the deceased should take the share its parents would have received. There were other specific legacies to be paid out of such funds. A subsequent clause of the will provided that upon termination of the trusts, in case any balance remained, it should belong to testator's residuary estate. The residuary clause declared that in case of her survival all the rest and residue of testator's property should go to his wife, but if she should die before him it should then go to his son, while in case of his predecease without issue it should pass to the next of kin. That clause dealing with collateral relatives provided for bequests of $2,500 to testator's brothers and sisters and $1,000 to each niece and nephew, with directions that in case of the death of any such person his or her issue should take. Both testator's wife and son survived him, and during her life three of the five brothers and sisters died. *Held*, that the surplus remaining after payment of the particular legacies passed to the representatives of the wife under the residuary clause, and not to testator's next of kin.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1140; Dec. Dig. &⇒527.]

2. WILLS &⇒820—CONSTRUCTION—TRUSTS.

*Held*, that the specific legacies should be paid, one-half from each trust.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2114–2119, 2121; Dec. Dig. &⇒820.]

3. WILLS &⇒531—CONSTRUCTION—INTERESTS.

*Held* that, where specific legatees had died leaving issue, such issue took per capita and not per stirpes.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1144, 1148–1152; Dec. Dig. &⇒531.]

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. WILLS ☞439—CONSTRUCTION—POWER OF COURT.**

The court should not invade the realm of will-making, but must give effect to the testator's intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955, 957; Dec. Dig. ☞439.]

Appeal from Special Term, Westchester County.

Action by the United States Trust Company of New York, as trustee, against Marshall O. Terry and Frank L. Hall, as executors, and others. From a judgment construing a will, the named defendants appeal. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and RICH, JJ.

Ernest P. Hoes, of New York City, for appellants ex'rs of Terry.

Paul R. Towne, of New York City, for appellants sisters and nephews and nieces of testator.

Charles W. McKelvey and William G. Barr, both of New York City, for respondents.

STAPLETON, J. The object of the plaintiff's action is a judicial construction of the will of Ambrose M. McGregor, deceased, in relation to clauses as to the meaning of which plaintiff professes to be in doubt. The plaintiff is a trustee of a trust created by the will. The defendants are the trustees of a similar trust; the executors named in the will of the testator's widow, now deceased; the executor of the will of the testator's son, now deceased; adult and infant collateral relatives of the deceased, who are legatees; and certain other persons, in whom we are not interested in the disposition of this appeal.

The testator died on the 31st day of October, 1900. His will was executed on the 27th day of January, 1897. A codicil was executed on January 20, 1899. The will was probated in this state, in the county of Westchester. The testator was survived by his widow, Tootie, and his son, Bradford. At the time of his death he had two brothers (John A. and Alexander H.), and three married sisters (Margaret J. Coleman, Mary A. Kendall, and Jane Drake). The son Bradford died on the 7th day of September, 1902. He devised and bequeathed the bulk of his estate to his mother, the testator's widow. The widow of the testator remarried. Her husband's name is Terry. She died on the 17th day of August, 1912. She left a will in which she provided generously for her kin and her surviving husband, and in which she munificently endowed an Ohio corporation, named "A. M. McGregor Home," having among its purposes the care of destitute aged men and women in the village of East Cleveland, Ohio.

Under the residuary clause of the will of Ambrose M. McGregor, his widow received $1,046,535.36 out of a total estate of $1,512,274.51. The questions before the court involve the distribution by the two trustees of about $273,000. The executors of the testator's widow have also contended that in any event a large part of the fund now held as principal includes the proceeds of certain subscription rights and stock

dividends and the proceeds of stock of subsidiary corporations received by the trustees in connection with shares of the Standard Oil Company of New Jersey, which proceeds constitute income due the estate of the widow. A motion on their behalf was granted, reserving their rights in these issues in view of the fact that such issues become immaterial under the construction of the will adopted by the trial court.

The testator's two brothers and his sister, Margaret Coleman, died before the death of the widow. The facts as to the testator's brothers and sisters and their descendants are manifested by this classification of persons and reference to periods of time:

Ambrose M. McGregor had two brothers and three sisters, all of whom survived him, viz.:

    1. John A. McGregor.

    2. Alexander H McGregor.   } Died prior to death of Mrs. Terry.

    3. Mrs. Margaret J. Coleman.

    4. Mrs. Mary Kendall.   } Now living.

    5. Mrs. Jennie Drake.

I. John A. McGregor died July 25, 1910. (Le Roy L. McGregor is executor.) His descendants are:

    1. Alanson A. McGregor.

    2. Le Roy L. McGregor.

        (1) John A. McGregor   } Both infants under 14.

        (2) Joe F. McGregor.

II. Alexander H. McGregor died September 20, 1904. (Frank McK. Biggar is administrator.) His descendants are:

    1. Charles J. McGregor died August 8, 1907. (Sara G. Mergenthal is executrix.) His descendants are:

        (1) Dorothy is over 14.

        (2) Donald.   } Under 14.

        (3) Mary Isabelle.

    2. Ambrose Morrison McGregor. His descendant is:

        (1) Robert McGregor, under 14.

    3. Mrs. Susie F. Durey. Her descendants are:

        (1) Thane Durey, over 14.

        (2) Donald Durey, under 14.

        (3) Gerald Durey, under 14.

    4. Mrs. Elizabeth Isabelle Giles. Her descendant is:

        (1) Marshall McG. Giles, under 14.

    5. Mrs. Nellie Kimball. No descendants.

    6. Mrs. Elsie Biggar. Her descendants are:

        (1) Jane B. Biggar, under 14. (Died after beginning of action, leaving her father, Frank McK. Biggar, her only next of kin.)

    7. Mary L. McGregor (now Mrs. Warren).

        (Mrs. Warren has one child, born December, 1913, who has no interest in the fund.)

    8. Margaret Mildred McGregor (now Mrs. Woodworth).

III. Mrs. Margaret J. Coleman, died in February, 1912. (Margaret J. Coleman is administratrix.) Her descendant is:

    (1) Margaret J. Coleman.

IV. Mrs. Mary A. Kendall. Her descendants are:

    (1) John Alexander Kendall.

    (2) William H. Kendall.

    (3) Maude B. Kendall.

    (4) Claude G. Kendall, died May 9th, 1901, without issue. (Mary A. Kendall is administratrix.)

V. Mrs. Jennie Drake. Her descendant is:

    (1) Mrs. Edna M. Fontaine.

The clauses of the will presented for construction, and which are of controlling .importance, read:

"Twelfth. To the United States Trust Company of New York, I give the proceeds of one hundred and twenty-five shares of Standard Oil Trust certificates, to have and to hold the same in trust, to invest and reinvest as trustee for my wife Tootie B. McGregor, for and during her natural life, to collect and receive the interest, income and profits thereof and to pay the same to my said wife Tootie B. McGregor, and to and for her use and benefit for and during her natural life; and unto the Union Trust Company of New York I give the proceeds of one hundred and twenty-five shares of Standard Oil Trust Company Certificates on the like trust for my said wife Tootie B. McGregor, to have and to hold in trust to invest and reinvest, collect and receive the interest income and profits thereof and pay the same to my said wife for her use and benefit, and for and during her natural life; and upon the death of my said wife said trusts shall cease, and then the funds thereof, principal and unexpended income and whatever may be in the trusts after deducting legal charges and commissions shall be paid and applied as follows—to each of my sisters and brothers then living in addition to the sum bequeathed to them each in the third paragraph of my will I give the further sum of twenty-five hundred dollars, and unto each of my nieces and nephews the children of my said sisters and brothers, I give the further sum of one thousand dollars, such additional sums and legacies to go in like manner as in such third paragraph provided in case of decease of any of such classes of legatees or of any of such legatees, the issue of any deceased to take the share its parent would have received; and in addition to the five thousand dollars in the sixth paragraph of this my will trusteed for the benefit of Ambrose Morrison McGregor I give unto said Cleveland Trust Company upon the like trust the further sum of five thousand dollars, to invest and reinvest, collect and receive the interest, income and profits and pay and apply the same to and for the use and benefit of said Ambrose Morrison McGregor until he attains the age of thirty years, and then and so soon as he reaches his thirtieth year of his age to pay to him the principal and any unexpended income, and in case of his death before he shall have reached his thirtieth year of age then to pay the principal and any accumulation of income to the next of kin of said Ambrose Morrison McGregor; and unto Ed. L. Barber, I give the sum of sixty-five hundred dollars as a further legacy, and if he shall have died leaving issue, then the same shall be paid to such issue; and unto Adelaide Louise Barber, I give a further legacy of sixty-five hundred dollars if then living, and if she shall have died leaving issue then the same to be paid to such issue then living, if any; and unto James McCrosky, if then living at the time of such division of such funds, then I give a further legacy of twenty-five hundred dollars."

"Fourteenth. If after paying the additional legacies, at the termination of the trusts, as provided and directed by me, in the twelfth paragraph' of my will, there remain any balance and funds, over and above the sums required to meet, pay and discharge the said legacies, and the bequests and the trust provided for Ambrose Morrison McGregor, then such balances and surplus of such funds shall be paid and belong to my residuary estate, and pass thereafter according to the provisions hereinafter in respect to the residue of my estate."

"Sixteenth. All the rest, residue and remainder my property and estate, both real and personal, of every name and nature and wherever situated, I do hereby give, devise and bequeath unto my said wife Tootie B. McGregor, if living at the time of my decease; and in the event of the death of my wife prior to my decease, then I give, devise and bequeath said rest, residue and remainder of all my property and estate real and personal to my said son Bradford B. McGregor and if he shall have died, also prior to my decease, leaving issue living at the time of my decease, then I give, devise and bequeath the same to such issue of my said son then living if any, but if both'he, my said son Bradford and my said wife Tootie B. McGreger, shall have died prior to my decease, and my said son Bradford shall leave no issue, living at the time of my decease, then I give, devise and bequeath all the said rest, residue

and remainder of my property and estate, real and personal, aforesaid, unto my heirs at law and next of kin, living at the time of my decease."

The third paragraph of the will, to which reference is made in the twelfth, is reproduced:

"Third. To each of my three sisters and two brothers, who may be living at the time of my decease, I give and bequeath the sum of two thousand five hundred dollars, the issue of any deceased brother or sister of mine to take the share to which such deceased brother or sister of mine would have been entitled under this provision of my will if living at the time of my decease, and unto each of my nieces and nephews, the children of my said brothers and sisters, I give and bequeath the sum of one thousand dollars, and in case either of them shall have died leaving issue, then the issue of any of them so dying to receive the share the parent would have received if living at the time of my decease."

The questions presented for solution are:

(1) Should the surplus remaining after the payment of the particular legacies mentioned in the twelfth paragraph be paid to the executors of Tootie B. Terry, or does such surplus pass to the living brothers and sisters and the issue of deceased brothers and sisters of testator? The trustees contend, and the trial court held, that the former alternative presents the proper construction.

(2) Should each legacy be paid in full from each trust, or should such legacies be paid in the amount of one-half from one trust and one-half from the other trust? The trustees contend, and the trial court held, that the latter alternative presents the proper construction.

(3) Where legatees have died leaving issue, do such issue take per capita or per stirpes? The trustees contend, and the trial court held, that such issue take per capita.

[1-4] We approve the decision of the learned trial court in the three instances. As to the second question, we are content to say that in the words used by the testator there is no foundation for the claim that the demonstrative legacies should be duplicated. He made a precise fixation of the sum of his benefaction. To support our affirmance of the learned trial court's decision of the third question, it is sufficient to cite Schmidt v. Jewett, 195 N. Y. 486, 88 N. E. 1110, 133 Am. St. Rep. 815, and Soper v. Brown, 136 N. Y. 244, 32 N. E. 768, 32 Am. St. Rep. 731. In recording our affirmance of the learned trial court's decision on the first question, a statement may be desirable: The construction of the trial court did not overstep the bounds of interpretation and invade the domain of will-making. The construction gave effect to the intent of the testator, plainly and unequivocally expressed; the intent not being in contravention of a statute or of public policy. It favored the vesting of the remainder. It avoided intestacy as to the surplus of the trust fund. The result has the approval of authority. Cammann v. Bailey, 210 N. Y. 19, 30, 103 N. E. 824; Salter v. Drowne, 205 N. Y. 204, 212, 98 N. E. 401; Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86, 92, 69 N. E. 283, 67 L. R. A. 146; Haug v. Schumacher, 166 N. Y. 506, 513, 60 N. E. 245.

By the fourteenth clause it is definitely provided that the surplus of the trust fund created by the twelfth clause, over and above the amounts of the legacies to collateral relatives, shall "be paid and belong to my

residuary estate, and pass thereafter according to the provisions hereinafter in respect to the residue of my estate." The meaning of these words is plain. The collateral relatives do not assert that this surplus was not disposed of under the residuary clause. Their contention is that they are the residuary legatees. By the sixteenth or residuary clause of his will the testator gives all of his residuary estate, "of every name and nature," to his widow "if living at the time of my decease." The collateral relatives are not to participate in the residuary estate if the widow or his son or the issue of his son are living at the time of testator's death. The widow and the son lived after him. The provisions of the residuary clause are substitutional, one person or class being substituted for another. The determinative event in each case is the death of the testator, none other being expressed or implied. Each person or class takes all or none of the residue. It is not convincing to suggest that the testator must have meant something other than his words plainly import upon the assumption that it is an incongruity intolerable in law for the life beneficiary of a trust, the funds of which by the terms of the will and codicil may be invested in securities of fluctuating value, to have a vested remainder in the surplus of the corpus of the trust fund after the payment of demonstrative legacies large in amount to legatees uncertain in number. Doane v. Mercantile Trust Co., 160 N. Y. 494, 55 N. E. 296; Riker v. Cornwell, 113 N. Y. 115, 127, 20 N. E. 602; Brown v. Richter, 25 App. Div. 239, 49 N. Y. Supp. 368; Matter of Asch, 75 App. Div. 486, 495, 78 N. Y. Supp. 561; Connolly v. Connolly, 122 App. Div. 492, 495, 107 N. Y. Supp. 185.

The cases upon which the collateral relatives rely are distinguishable because of the peculiar language of the wills involved, and the application of a rule inapplicable in the case at bar.

In Delaney v. McCormick, 25 Hun, 574, affirmed 88 N. Y. 174, the will contained no words of gift in relation to the property in question, and the court applied the rule that, where there is no language importing a gift except in the direction to convert real estate into money and then make distribution, time is annexed to the substance of the gift and the vesting is postponed.

In Salter v. Drowne, supra, 205 N. Y. 215, 98 N. E. 404, the court's decision is epitomized in this paragraph:

"If, instead of holding as we do in this case that the intent of the testatrix as shown by her will was to postpone any possible vesting of the corpus of the trusts until the death of her daughter, we were in doubt about her intention, the rule to be applied in construing the will in this state is that where a gift arises from a direction to divide or convey the trust property among a specified class of persons, and such division or conveyance is contingent and dependent upon the happening of one or more uncertain events, the gift does not vest until the time for distribution or conveyance arises."

In the tenth clause of the will before us, when the testator intended to attach a future condition or contingency to the substance of the gift, he was reasonably and substantially accurate in the expression of that intention. The clause reads:

"To the United States Trust Company of New York, I give the proceeds of one hundred and twenty-five shares of Standard Oil certificates, to have and

to hold, in trust, to invest and reinvest, to receive the interest, income and profits, and pay the same to my said son, Bradford B. McGregor, and to and for the use and benefit of my said son Bradford B. McGregor, for and during his natural life, and upon his decease, to pay over the principal and any unexpended income to the issue of my said son Bradford, and in the event of his death leaving no issue, then to pay the same to my next of kin then living." Salter v. Drowne, supra, 205 N. Y. 210, 98 N. E. 401.

The learned counsel for the collateral relatives suggests that:

"The fourteenth paragraph was an afterthought, inserted after the will had been drafted; and because the person who drew this will did not in the twelfth paragraph, as in the tenth and eleventh paragraphs, go on and make a complete disposition of the corpus of the trust fund, but attempted to dispose of it by making its ultimate disposition pass under the residuary clause following."

The adoption of this hypothesis would lead us into the boundless realm of imagination—a journey to be avoided by those engaged in the prosaic work of interpreting written instruments.

We think the construction of the learned trial court as to the ownership of the surplus of the fund we have been considering was compelled by the plain language of the will, and that it is in harmony with the entire testamentary scheme of the testator.

The judgment should be affirmed, with costs. All concur.