In the Matter of the Estate of EMILY A. WATSON, Deceased.

Surrogate's Court, Westchester County, June 28, 1932.

*Stewart & Shearer* for the accounting trustee.

*Wiswall, Walton, Wood & MacAffer* [*Frank L. Wiswall* and *A. Kendall Roberts* of counsel], for Harvey A. Dwight, Jessie R. Dwight Orage, Elizabeth von der Decken and G. F. von Finckenstein, remaindermen.

*Lynn, Wandless & Lanier* [*Edgar G. Wandless* of counsel], for remaindermen.

*Coudert Brothers* [*Thomas W. Kelly* of counsel], for remaindermen.

*Taylor, Blanc, Capron & Marsh,* for Herwarth von der Decken.

*Arthur McCausland,* for the executor of John Watson Dwight, deceased life tenant.

*William S. Siemon,* for remaindermen under the will of John Watson Dwight.

*White & Case,* for Jean B. Dwight, Lucia King Dwight and Harriette D. Bailey.

SLATER, S. On this accounting proceeding, three questions are presented for decision and relate to the construction of the will of the testatrix.

Emily A. Watson, a maiden lady of over eighty years of age, died on February 1, 1924, a resident of Westchester county, leaving a last will and testament executed on June 7, 1915, and a codicil thereto executed on August 6, 1915, which were admitted to probate on December 19, 1924.

Her estate was upwards of $12,000,000. Prior to the execution of the will, the testatrix had made four wills which were executed by her in the years 1900, 1903, 1907 and 1912, respectively. The tenth paragraph of the will in which we are now interested was identical with the tenth paragraph of every former will.

The tenth paragraph of her will is as follows:

" *Tenth.* All the rest, residue and remainder of my property, both real and personal, of whatever kind or nature and wherever situate, as well that which I may hereafter acquire as that which I now possess, I give, devise and bequeath to the United States Trust Company of New York, in trust, however, to divide the same into as many shares or portions as there may be children of my cousin, Harvey A. Dwight, and grandchildren of my cousin, George W. Pratt, surviving at the time of my death, and to invest and keep invested one such share or portion for the benefit of each child of my said cousin, Harvey A. Dwight, and each grandchild of my said cousin George W. Pratt, then surviving, and to pay over the income and profits therefrom to the child or grandchild for whose benefit such fund is so held, during his or her natural life, and upon his or her death to pay over and deliver the principal of the fund with all accumulated income to his or her issue, *per stirpes*, and in default of such issue, I direct that the same be divided equally between said surviving children and grandchildren and the issue of any who may have died, *per stirpes*."

The estate was an unusual one, not alone in its size, but in other respects. For instance, the will was contested, temporary administration was had, and the allowance to counsel and the commissions of the temporary administrators and the executors were very large. The court effected a compromise of the contest by the payment of over $1,000,000 to the contestants. Upon the accounting of the executors, with all these payments, the estate was the same size it was at the time the decedent died. This was brought about by the character of the securities and the inflation of the times. After the inheritance taxes to the State and Federal government were paid, it was found that about $1,000,000 could be set up for each of the seven trusts representing the surviving grandchildren and children of the two cousins. The executors accounted under date of December 22, 1925, and trusts were set up for the following persons: (1) Harriette D. Bailey; (2) Jean B. Dwight; (3) Lucia K. Dwight, and (4) John Watson Dwight, the four surviving children of the cousin, Harvey A. Dwight, and (1) Comtesse Victoire Louise Niel; (2) Countess Pauline Andre de Gasquet James de la Mettrie, and (3) Count George Watson Pratt de Gasquet James, the three surviving grandchildren of the cousin, George W. Pratt. Harvey L.

Dwight, a son of the cousin, Harvey A. Dwight, died in 1910, before the testatrix, leaving his children, Harvey A. Dwight and Jessie R. Dwight Orage. In 1907 Elizabeth Bleecker von der Decken predeceased the testatrix, leaving two children, Herwarth von der Decken and Elizabeth Grafin Finck von Finckenstein.

One of the trusts set up was for John Watson Dwight, one of the children of the cousin, Harvey A. Dwight, who survived the testatrix. John Watson Dwight died unmarried and without issue, leaving a will admitted to probate in New York county January 13, 1932. It becomes necessary to determine who is entitled to take the remainder of the trust fund heretofore held for his benefit and the income which had accrued thereon up to the date of his death.

It is the contention of Harvey A. Dwight and Jessie R. Dwight Orage, children of Harvey L. Dwight, a predeceased son of the cousin, Harvey A. Dwight, and the two children of Elizabeth Bleecker von der Decken, a predeceased granddaughter of the cousin, George W. Pratt, that they take a share or portion of the corpus of the trust fund held for the life of John Watson Dwight, and the accrued income now being accounted for, under that part of the tenth paragraph — the last eleven words — which says: " and the issue of any who may have died *per stirpes.*"

The surviving children of the cousin, Harvey A. Dwight, with the exception of John Watson Dwight, who has died, and the surviving grandchildren of George W. Pratt contend that the principal of the trust fund and the accrued income should be divided into six equal parts and one of such parts should be paid to each of them. This contention excludes the two children of Harvey L. Dwight, a son of Harvey A. Dwight, who predeceased the testatrix, and the two children of Elizabeth Bleecker von der Decken, a granddaughter of George W. Pratt, who predeceased the testatrix, and also excludes the estate of John Watson Dwight as a participant.

An action, *Dwight* v. *Fancher,* was had in Albany county in 1926 (217 App. Div. 377; affd., 245 N. Y. 71), wherein the plaintiffs were Harvey A. Dwight and Jessie R. Dwight Orage, the children of Harvey L. Dwight, a son of Harvey A. Dwight, the cousin. The contention of the plaintiffs in such action was that they stood in the position of their deceased father and that a share in the corpus should be set up for them as representing the interests of the deceased father; that, in the light of the facts, the word " children " should be construed to include children of deceased children. The case was decided adversely to them. It is claimed herein by some of the parties that these plaintiffs are now reasserting their claim; that their contention was determined in such action and

that the matter is *res judicata*. The defense of former adjudication is pleaded.

An examination of the printed case on appeal to the Court of Appeals discloses that the sixth paragraph of the complaint sets forth that it was the true intent and meaning of the testatrix to include within the class " *children of my cousin Harvey A. Dwight* " to whom part of the residuary estate is given and that she used the word " children " in the general sense to include these plaintiffs. The ninth paragraph states that the plaintiffs were entitled each to a one-ninth interest in the trust fund constituting the residuary estate passing under the tenth paragraph of her will. The prayer sought a construction of the will and requested the court to construe the same to the end that the plaintiffs' rights may be definitely established and that the trustee of the residuary estate in the said will named be directed to set aside a one-ninth part of the said trust fund for the benefit of each of these plaintiffs.

Answers were filed by the defendants denying the allegations of the sixth and ninth paragraphs of the complaint. The trial was had before Mr. Justice NICHOLS upon the issues of fact and the law therein. In this action, the two great-grandchildren of George E. Pratt, the children of Elizabeth von der Decken, the predeceased grandchild (parties hereto), were not party defendants, so the plea of *res judicata* is of no avail as to them.

The other findings of fact were that the cousins, Harvey A. Dwight and George W. Pratt, mentioned in the tenth paragraph of the will, were formerly associated in business with John Watson, the father of the testatrix; that the estate of the testatrix came to her principally through her father; that she never married; that she did not know at the time of making her will of the death of Harvey L. Dwight, and that the relationship between the cousin, Harvey A. Dwight, and the testatrix was friendly; that the testatrix left with her will, the one in question, a memorandum stating the names of the grandchildren of her cousin, George W. Pratt, and stating further where information could be obtained as to the children of her cousin, Harvey A. Dwight; that Harvey A. Dwight, the plaintiff herein, the son of Harvey L. Dwight, was named for his grandfather, the cousin Harvey A. Dwight; that she did not know the names or addresses of the children of the cousin Harvey A. Dwight; that the testatrix was a woman of most secretive nature, was exceedingly unsociable and did not confer with or discuss her affairs with anybody; that she executed prior wills in 1900, 1903, 1907 and 1912, which were all drawn by the same attorney; that the foundation of her father's fortune came from the business conducted by him with her cousins, Harvey A. Dwight and George W. Pratt,

who had been instrumental in the accumulation of the said fortune; *that the intention of the testatrix was to divide the estate between the Dwight and Pratt families.* (Italics mine.)

The opinion by Mr. Justice NICHOLS states that " the question involved is this: whether in the tenth clause of her will, where she says, ' I give, devise and bequeath to the United States Trust Company of New York, in trust, however, to divide the same into as many shares or 'portions as there may be children of my cousin, Harvey A. Dwight, and grandchildren of my cousin, George W. Pratt, surviving at the time of my death,' etc.; whether so far as the children by the term children of my cousin, Harvey A. Dwight she meant the issue of Harvey A. Dwight, the children of those who represented deceased children. * * * Then comes the tenth clause. This shows to my mind that this lady had a very clear and determined attitude so far as family was concerned, because it was not the question whether John left five children and Mary left one. The family idea was that the children of John should have one share and Mary one share. The repetition of *per stirpes*, the family idea, always was prominent in every section of this will. It showed always when she was writing or declaring herself in this will as to other beneficiaries that where she used the word children she used it in its ordinary sense and acceptation, and if there were any of them deceased, she always specified to their issue, showing that she made a distinct difference between children and grandchildren. She made the same thing, a distinction very clear to me as to grandchildren in the third clause, to my cousins, Annette Graham and Eleanor Watson Graham, grandchildren of so and so."

The court decided adversely to the claim of the plaintiffs.

In the Appellate Division, Mr. Justice VAN KIRK wrote the affirming opinion and said, in part, " She throughout her will planned to give by families and left generally her bequests to be distributed *per stirpes;* she intended to give largely to the descendants of the men who had been copartners with her father in the business in which he was engaged when the foundation of his fortune was laid; *she did not think or intend that any part of either family should be excluded;* when she died she *intended that Harvey L. and his issue would take a share and she supposed she had carried out this intent.* (Italics mine.)

" The condition then would be this: She *intended* to give and supposed she *had given a share to Harvey L.* and his issue, but she has used words *unambiguous and plain* in meaning which absolutely *exclude him and them.* * * * The question then is, can the court aid the testatrix to dispose of her property as she had the

absolute right to do, as it is contended she intended to do and supposed she had done, when in fact she had done quite the contrary? (Italics mine.) The plaintiffs say that the court should aid in carrying out her intention by reforming the will, by holding by " children of " she meant " issue of."

" There is in this tenth clause no ambiguity. Her use of the words ' child,' ' children,' ' grandchildren ' and ' issue ' in the will, paragraphs second to eight, inclusive, indicate a clear understanding of the meaning and effect of each of these words. The expressions ' surviving at the time of my death ' and ' then surviving ' are self-explanatory. * * * Words and expressions used by a testator must be given their ordinary meaning. * * *. Where the language used in the will has a clear meaning it must be accepted as disclosing the intent * * *. The court should not construe a will contrary to the ordinary meaning of the language used, upon conjecture as to intent. * * * Where there is no ambiguity, either patent or latent, there is no field open for construction of the will." (Citing cases.)

" She made no effort to learn which of the children of Harvey A. Dwight were living and which, if any, were dead. She apparently was content to satisfy her feelings by giving to the living children only, making no provisions for issue of deceased children. In other paragraphs of her will she provided for the issue of a legatee in case he should predecease her."

In the Court of Appeals the *per curiam* opinion, affirming, said: " Evidence of extrinsic circumstances may sometimes assist the court in the construction of the language which a testator has used to express his testamentary intention; but here the language of the will, even when read in the light of extrinsic circumstances, admits of but one construction. Parol evidence is not admissible to show that the testatrix did not mean what she has said in words, though these words may have been chosen by the attorney who drafted the will rather than by the testatrix."

It is altogether clear that the only issue involved related to the plaintiffs' rights to share in the trusts created out of the residuary estate, when divided among the children and grandchildren of the two named cousins.

To sustain a plea of a former judgment in bar of a second action, it must appear that the cause of action in both suits is the same, or that some fact essential to the maintenance of the second action was in issue and determined in the first action adversely to the claimant. The judgment in *Dwight* v. *Fancher* (*supra*) was only conclusive as to what was decided and nothing more. (*Griffen* v. *Keese*, 187 N. Y. 454, 466; *Hull* v. *Hull*, 225 id. 342, 353.) The

issue is made by the complaint and answers. The issue named in the complaint in *Dwight* v. *Fancher* (*supra*) and denied by the answers was whether the plaintiffs were included within the class " children of my cousin Harvey A. Dwight " to whom part of the residuary estate is given in trust.

" The doctrine of *res judicata* does not require that a party litigant shall ever be estopped from controverting any matter of law or fact which has not been, either by express declaration, or necessary implication, determined by the judicial tribunal whose decision is set up as the *res judicata.*" (Spencer Bower on Res Judicata, p. 102.)

Chief Judge POUND in the recent case of *Donahue* v. *New York Life Ins. Co.* (259 N. Y. 98, 102, 103) writes: " A judgment is conclusive upon the parties only in respect to the grounds covered by it and the facts necessary to uphold it, and although a decision, in express terms, professes to affirm a particular fact, yet, if that fact was immaterial to the issue and the controversy did not turn upon it, the decision will not conclude the parties in reference to such fact. It does not work an estoppel as to unessential facts even though such facts are put in issue and decided. (*Springer* v. *Bien,* 128 N. Y. 99, 102; *House* v. *Lockwood,* 137 N. Y. 259, 268; *Rudd* v. *Cornell,* 171 N. Y. 114, 128; *Stokes* v. *Foote,* 172 N. Y. 327; *Silberstein* v. *Silberstein,* 218 N. Y. 525; *People ex rel. McCanliss* v. *McCanliss,* 255 N. Y. 456.)

" ' A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first. It is not conclusive, however, to the same extent when the two causes of action are different, not in form only, but in the rights and interests affected. The estoppel is limited in such circumstances to the point actually determined. * * * The decisive test is this, whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second.' (CARDOZO, Ch. J., in *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304, 306, 308.) "

This cause of action and the one determined in *Dwight* v. *Fancher* are substantially different as to the rights and interests affected. The purpose of the action, measured both by time and intent, was to determine the number of trust shares. The instant question had not yet arisen and was not involved, litigated or decided in such action. Consequently, this court will decide the other questions presented.

John Watson Dwight, the beneficiary of one of the trusts created pursuant to the tenth paragraph of the will, died in default of issue, and in such event the corpus passed over by these words: " I direct that the same be divided equally between the *said surviving children and grandchildren, and* the *issue* of any who *may have died per stirpes.*" (Italics mine.)

The will was drawn with care under the guidance of a learned lawyer. It gave away a vast fortune, *first*, in the execution of the power of disposition granted by decedent's father, and, *second*, in the gift of her own estate acquired from her father.

The father, John Watson, with Colonel George W. Pratt of Prattsville, N. Y., and Harvey A. Dwight of Albany, were engaged in business as tanners of leather. The decedent's father sold to the trade of America at his place of business in the " Swamp," so called, where all the leather houses were located in the city of New York in or about 1850 and later.

The tanneries were located at Prattsville, N. Y., where Zadoc Pratt, the father of George W. Pratt, started the business. Pratt's Rock, a great ledge, has on its face the bas-relief of the colonel on a horse. With this carving, the rocks recount the story of the tanning business and the Civil War record of the son. It is a unique method of recording progress and history. It is carved upon the rocky face of nature.

The draftsman of the will used words with knowledge of their legal use. It was indeed a family will as found by the court in *Dwight* v. *Fancher (supra).* The word " issue " is frequently used as a means of carrying the gift into the remoteness of the blood. (*Petry* v. *Petry*, 186 App. Div. 738; affd., 227 N. Y. 621; Dec. Est. Law, § 47-a, as added by Laws of 1921, chap. 379.) It was always " *per stirpes.*" In a gift to cousins in the second paragraph of the will, care is given that " in the event of his death before my own death, to his issue him surviving *per stirpes.*" In subsequent paragraphs third, fourth, fifth, sixth, seventh and eighth the words " *such* child or children " are used in the creation of trusts for the life of a person and the giving of the principal of the trust fund over to his children and the issue of any " *such* child or children who may have died." All giving evidence of the intention not to omit any person of the blood of the first taker.

She chose as her chief beneficiary " each child of my said cousin, Harvey A. Dwight, and each grandchild of my said cousin, George W. Pratt, then surviving." This means and has been held in *Dwight* v. *Fancher (supra)* to mean each child of Harvey A. Dwight and each grandchild of George W. Pratt living at the death of the testatrix. The division was here made and trusts were provided

for the life of each of the said children and grandchildren by the executors.

In construing wills, the testator's intention is the primary guide. (*Matter of Bump*, 234 N. Y. 60.) Intent is ascertained from a reading of the entire will. (*Matter of Silsby*, 229 N. Y. 396.) No power of the revision of wills is intrusted to the courts. (*Matter of Durand*, 250 N. Y. 45, 54, 55.) If the intention of the testator is ascertained with reasonable certainty from the words used and the provisions of the will are valid, it is quite unnecessary to discuss the decisions made in other cases. (*Cammann* v. *Bailey*, 210 N. Y. 19, 30; *Matter of Pulis*, 220 id. 196, 202; *Dwight* v. *Fancher*, *supra*.)

" It is the testator's mind we seek to read. * * * To interpret this intent we may consider the circumstances known to him when the will was made, and we may search the will itself for any language that may give us light." (*Matter of Neil*, 238 N. Y. 138, 140.)

Careful consideration of the language of the will before us is important to determine the testatrix's intention with regard to the instant question. Such intention, as disclosed by the will and in the light of the circumstances surrounding her at the time it was made, should control the court in construing it. It has been said many times that the cardinal rule in the construction of wills is that the intention of the testator should be ascertained if possible.

While a will is in some sense ambulatory as to objects and subjects with which it deals, yet it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which control the disposition of his property. That intention and purpose must be found existing at the time of the execution of the will. (*Morris* v. *Sickly*, 133 N. Y. 456, 459; *Matter of McCafferty*, 142 Misc. 371, 372, 374; affd., 236 App. Div. 678, Second Dept.)

It is the rule that a gift to a class has been defined as the gift of a sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons. (*Matter of Kimberly*, 150 N. Y. 90, and in other later cases.) But in the instant case we have confirmation of the definition stated in the English case of *Cruse* v. *Howell* (4 Drewry, 215, 217): " If there is a bequest to certain persons *nominatim*, or *so described* as to be fixed at the time of the gift, so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses."

The gift of the testatrix in the tenth paragraph was not to a body of persons uncertain in number at the time of the gift, but to certain

persons " so described as to be fixed at the time of the gift," *i. e.*, each child of the cousin, Harvey A. Dwight, and each grandchild of the cousin, George W. Pratt, *then surviving*. Each person so named may be picked out *nominatim*. That was as distinct a designation of the several beneficiaries as though they had been described by their own names, *nominatim*. In my opinion, this was a gift to designated persons in being at a special time. (*Matter of Russell*, 168 N. Y. 169, 175; *Matter of King*, 200 id. 189; *Matter of McCafferty, supra*, at p. 380.)

The trustees were to divide the corpus among the persons entitled on the death of the testatrix. It is a general rule of construction that words of survivorship in bequests of personal property are to be referred to the period of division and enjoyment unless there is *special intent* to the contrary. Here we find an intention to the contrary in the testatrix's use of the word " *said* " preceding the words " surviving children and grandchildren," making the class definite and fixed.

The children and grandchildren of the two cousins who survived the testatrix took vested remainders, subject to be divested by the birth of issue to the life beneficiary. Some courts call such interests " contingently vested remainders." The divesting condition subsequent never occurred with regard to this trust, since John Watson Dwight died without issue. (*Matter of Leonard*, 143 Misc. 172, 180, and subsequent pages and cases cited; *Matter of Banker*, 223 App. Div. 496; affd., 248 N. Y. 596; *Matter of United States Trust Company*, see referee's report and opinion in case on appeal to Court of Appeals, affd., 179 App. Div. 923; affd., 223 N. Y. 617.)

In *Matter of Buechner* (226 N. Y. 440, 443) CARDOZO, J., writing for the court, said: " Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant. Excision is a ' desperate remedy.' (*Adams* v. *Massey*, 184 N. Y. 62, 69.) It is ' only a last resort, to be availed of when all efforts to reconcile the inconsistency by construction have failed.' (*Van Nostrand* v. *Moore*, 52 N. Y. 12, 20.)"

No words used by the testatrix should be cast aside, but effect must be given, if possible, to every word and provision.

The conjunction " and " is used in writing the gift to the said surviving children and grandchildren *and* the issue of deceased children and grandchildren. The word " and " as used herein is not a word of substitution and it flows from the intention " to be gathered from the whole will, with context and cognate gifts shedding light upon the meaning." (*Matter of Evans*, 234 N. Y. 42, 45.) The word was used by an experienced lawyer to express

the testatrix's intent. The skill of the draftsman must be considered and the courts will feel constrained to adhere strictly to its terms. (*Adams* v. *Massey; supra; Overheiser* v. *Lackey*, 207 N. Y. 229, 233.)

The word " and " is conjunctive and does not create a substitutional or alternative gift. (*Matter of Tamargo*, 220 N. Y. 225, 229, and cases cited.) The force of the conjunction " and " " is not easily to be got over." (*Matter of Evans, supra; Matter of Barrett*, 141 Misc. 637, 641, 642.) In no way can the word " and " in the phrase be construed to mean " or " because it comprehends other persons.

The gift to the children and grandchildren of the two cousins having vested in them, it must necessarily follow that the words " *and* the issue of *any* who may have died *per stirpes* " could not refer to or mean them. It was the intention of the testatrix to provide and, by the use of her language she did provide, an additional gift to the issue of any child of Harvey A. Dwight or grandchild of George W. Pratt who may have died before her.

The court has the power to supply or transpose words and phrases, to insert or leave out provisions, if necessary, but only in aid of the testator's intention and purpose. (*Matter of Kenny*, 224 App. Div. 152, 156; affd., 250 N. Y. 584; *Eidt* v. *Eidt*, 203 id. 325, 328.)

Those who take as issue of any child or children who may have died take contingently and as a class, and are confined to those persons who come within the term at the date when division or distribution is directed to be made. There is no vesting as to them until the class is determined. (*Matter of Baer*, 147 N. Y. 348, 356; *Matter of Kimberly*, 150 id. 90; *Teed* v. *Morton*, 60 id. 502, 506.) In this class, at John Watson Dwight's death, is found Harvey A. Dwight and Jessie R. Dwight Orage, issue of Harvey L. Dwight (son of Harvey A. Dwight), who predeceased the testatrix, and Herwarth von der Decken and Elizabeth C. F. von Finckenstein, issue of Elizabeth Bleecker von der Decken (grandchild of George W. Pratt), who predeceased the testatrix.

The leading case in support of the contention of the issue of the predeceased children and grandchildren is *Teed* v. *Morton* (60 N. Y. 502, 506 [1875]), decided by a unanimous court. The decision here may well rest upon that well-considered case. The instant facts are much stronger to support such a decision than those disclosed in *Teed* v. *Morton*. It decides two important legal propositions: (1) It holds that a gift to a class vests in those who answer the description at the time of distribution. On this legal point, *Teed* v. *Morton* (*supra*) is frequently cited with approval. (2) It also holds that a gift over takes in issue of deceased children

without *distinction* between those whose parents died before and those who died after the making of the will.

This case arose in the Surrogate's Court of Westchester county. The paragraph of the will construed was in these words: " * * * and upon the further trust, that if the said William shall die without leaving issue, him surviving, then to pay, distribute and divide the same equally to and among my surviving children, *and* the *issue* of such of them as *may have died* leaving issue, such issue to take the share their parents would have taken if living."

In the instant case the word " *issue* " is used; in place of the word " *such* " we have the word " *any;* " in place of the word " *them* " the reference is omitted. In the present will we have, too, the words " *who may have died.*" So it may be fairly stated that the paragraph considered in *Teed* v. *Morton* is almost in the same words as the paragraph in the instant case. As the words are the same, so, also, is the meaning. The question in that case and here is whether, by these words, the issue of persons who died before the making of the will are to be included among those who take, upon default of issue of the life tenant.

In *Teed* v. *Morton* (*supra*) the court decided that the *issue of the deceased children* living at the death of the son William take as primary legatees under the clause in question without distinction between those whose parents died before and those who died after the making of the will; that the word " them " refers to all his children and not to the surviving children only. The court said: " This conclusion is, we think, justified by the authorities, and avoids a construction which would, most likely, defeat the intention of the testator, by excluding from a general family provision the issue of children who died before him, and who, so far as we can see, were, to the same extent, as the issue of his children living at his death, objects of his regard. ( *Tytherleigh* v. *Harbin,* 6 Sim. 329; *Clay* v. *Rennington,* 7 Id. 370; 2 Jar. on Wills, 684.) "

*Matter of Crawford* (113 N. Y. 366, 373, 374 [1889]) is another case on the subject that arose in the Surrogate's Court of Westchester county. *Teed* v. *Morton* (*supra*) is reviewed and cited with approval.

In this case the will makes use of the words " shall die, or have died before me, leaving lawful issue surviving." Judge ANDREWS, writing for the court, said: " The decision in this case turns on the point whether, under the will, the issue of the nephews and nieces of the testator, who died during his lifetime and before the making of the will take under the residuary clause, the share which their parents would have taken if they had survived the testator. * * *

" The main argument in support of the contention that the issue of nephews and nieces of the testator who died before the making of the will are not comprehended in this clause is that the clause is strictly *substitutionary*, and that no one can take thereunder unless he is the representative of a nephew or niece living when the will was made, but who had died prior to the death of the testator."

What the testator meant in that case, or in the instant case, is a question of the construction of the words. " The cases [upon this question] are divided into two general classes," the court said, in *Matter of Crawford (supra)*. " In one class are the cases where the alternative clause is treated as strictly substitutionary. * * * The other class embraces cases in which the words following a gift to a class are introduced in form or in effect by way of proviso, and are construed as adding to the class who are to participate, defined in the prior clause."

This other class comes in by way of original and substantive limitation and the issue take as primary legatees and not as representatives by way of substitution to interests given in the prior clause. Judge ANDREWS, in the *Crawford* case, referred to the English cases upon the question and said: " The distinction between the two classes of cases is stated with admirable clearness by JAMES, V. C., in the case of *In re Hotchkiss's Trusts* (L. R. 8 Eq. 642)."

The ruling in *Teed* v. *Morton (supra)* and in *Matter of Crawford (supra)* is a liberal one and the tendency of the English cases is " toward the inclusion of the issue of predeceased children. The cases are collected by Jarman (2 Jarm. 771 *et seq.*) and he states that even where there is no original and independent gift to the issue, but the claim is founded on a clause apparently of mere substitution, the court ' anxiously lays hold of slight expressions as a ground for avoiding a construction which in all probability defeats the actual intention, by excluding the issue of a deceased child from participation in a family provision.' "

Judge ANDREWS, in *Matter of Crawford*, refers to the liberal construction which was adopted by the court in *Teed* v. *Morton* (60 N. Y. 502), and he says: " But we are relieved in this case from the necessity of a critical examination of the cases on the general subject, for the reason that the language of the will, in the case before us, points unmistakably to the inclusion of the issue of pre-deceased children as primary legatees."

In pointing to the language, he refers to the clause which carries the words " shall die or have died," and says that it is " alone conclusive of the testator's intention to provide for the issue of pre-deceased children. * * * The intention to include all such

issue, irrespective of the time of death of the parent, is emphasized by the words, ' shall die or have died,' pointing both to death in the future and the past."

The testatrix's use of the words " *who may have died* " creates the similarity with the words used in the Crawford will and there construed by the court.

Judge ANDREWS speaks of the grammatical tests to be applied and says it always gives way where, by applying them, the over-ruling intention discernible on a consideration of all the words of the will would be defeated.

It will be observed that the testatrix omitted as her beneficiary the *children* of the cousin, George W. Pratt, the gift passing to the children of Harvey A. Dwight and the *grandchildren* of George W. Pratt. This exclusion practically *nominatum* of the *child* of George W. Pratt (and his one child was living), the mother of the grand-children of George W. Pratt, is evidence that the testatrix intended to comprehend in the ultimate residuary gift all of the blood of Harvey A. Dwight and George W. Pratt, except in the case of the person specially excluded. A similar exclusion by the testator in the *Crawford* case was pointed to by the court as cogent evidence of the testator's intent to comprehend all his nephews and nieces who had died at any time before the making of the will. These words of original and substantive limitation are to the " *issue* of *any* "— any what? — any child of Harvey A. Dwight and grand-child of George W. Pratt.

This question was also written upon in *Wescott* v. *Higgins* (42 App. Div. 69 [1899], First Dept.; affd., 169 N. Y. 582) by Mr. Justice BARRETT. The case decided there was a *substitutionary* gift, but the opinion illuminates the subject by contrasting the legal principles applied to substitutionary and primary gifts. The court goes to great pains to name the authorities and to indicate the distinction between a primary gift and a substitutionary gift. In construing such clauses, the authorities recognize that the test is whether the gift to the issue is primary, or substitutionary. If it is *primary*, the issue of children who predeceased the execution of the will will take. In *Tytherleigh* v. *Harbin* (6 Sim. 329) the gift was to a class *and* the issue of such of them " as shall be then dead leaving issue." This was held to be an original, independent and sub-stantive gift. The gift was to the children *and* the issue. Mr. Justice BARRETT refers to the admirable expression used in this English case, viz.: " ' comprehending them concurrently with another class of objects,' which illustrates and clarifies many cases on the same line as *Tytherleigh* v. *Harbin*." The justice passes into a very interesting discussion of the cases, refers to *Matter of Craw-*

*ford* (*supra*), and states that in the *Crawford* case Judge ANDREWS carefully analyses the two classes of gift, primary and sub-stitutionary, and points out the effect of each on the question whether predeceased members of the class dying before the date of the will take. The case of *Tytherleigh* v. *Harbin* has been repeatedly followed in England and cited with approval in this State. (See 2 Jarm. *1589.) (See *Palmer* v. *Dunham*, 125 N. Y. 68, for a reference to *Matter of Crawford, supra.*)

In the instant case the testatrix's use of the words " issue of *any* who may have died " could not have referred to the issue of the " *said surviving children and grandchildren,*" because the *said* surviving children and grandchildren already had *vested* remainders and their interest would have passed by descent or by will. The words " issue of *any* who may have died " would be tautological, meaningless and needless, and could only supplement the full primary gift already made. Why speak of a person taking when that person already owns? Of course, there is no occasion for it and the testatrix did not so intend. She gave a new, independent gift, " comprehending them concurrently with another class of objects."

The word " *any* " as used is a pronoun and is defined by the lexicographers as meaning " all," " every," " an indefinite number," and so used has a comprehensive meaning. Words in common use are to be taken in their ordinary sense. (*Cox* v. *Island Mining Co.,* 65 App. Div. 508, 515; *New York County Medical Association* v. *City of New York*, 32 Misc. 116, 117; *Matter of Schuster*, 111 id. 534, 538.) To what noun does the pronoun " any " refer? Not to the said surviving children and grandchildren, because they already had vested interests. It refers to the issue of any (child or grandchild) of said cousins, who *may have* died, *per stirpes.*

Counsel for protesting remaindermen in their brief are impressed with the fact that " if the testatrix intended the word ' any ' to enlarge the class of preferred beneficiaries under her residuary clause, the very expression which she should have avoided was the word ' any.' If, at this point new personalities were for the first time * * * to enter into the plan of distribution, it called for the clearest possible and unambiguous language to introduce them." This impression readily yields to the words of Mr. Justice STAPLETON in *United States Trust Co.* v. *Terry* (167 App. Div. 152, 161; affd., 219 N. Y. 674), who said: " The adoption of this hypothesis would lead us into the boundless realm of imagination — a journey to be avoided by those engaged in the prosaic work of interpreting written instruments."

The draftsmen in all the prior paragraphs used identical words;

the word " *such,*" for example, was used many times, as in " the issue of any *such* child or children who may have died *per stirpes.*" In the last sentence of the tenth paragraph the word " *such* " is omitted. " Such " means " of that kind," " identical with," " being the same as what has been mentioned." The omission of this word in the sentence of gift in the tenth paragraph is of striking significance. The word " such " is used twice previously in the said tenth paragraph. Here is a plain intent which must control the court. These tokens of intention, taken together, have a cumulative value and create a very reasonable intent. The words of the will, with light shed upon their meaning by the context and the findings of fact in *Dwight* v. *Fancher (supra)*, are consistent with the construction and rule of law applied in *Teed* v. *Morton (supra)* and *Matter of Crawford (supra)*. All concede that intention is the final test. Wills are to be viewed in the light of their own language, the surrounding circumstances, and the common experience of mankind to obtain the thought and impulses of the testator. (*Matter of Barney*, 207 App. Div. 25, 28; affd., 239 N. Y. 584.) Courts will carry out the evident intent of the testator. (*Matter of Jackson*, 258 N. Y. 281; *Matter of Gabler*, 235 App. Div. 807.)

*Bronson* v. *Phelps* (58 Vt. 612, 619, 620 [1886]) gives approval to the English rulings on this legal proposition as well as to *Teed* v. *Morton (supra)*. In this case the court said: " The impression made in reading this bequest in connection with the other provisions of the will is, that the testator intended it as a family provision."

The will here was a family will. The will reeks with evidences of her intent to make it so. There was to be no discrimination and the last sentence of paragraph tenth caught up every one of the blood theretofore omitted by accident of prior death. The apparent scheme of the will should be carried out. (*Matter of Logan*, 131 N. Y. 456, 460; *Leask* v. *Richards*, 188 id. 291; *Matter of Miller*, 18 App. Div. 211; affd., 155 N. Y. 646.)

The last eleven words of the tenth paragraph are not meaningless or repugnant; they do not refer back to " said surviving children and grandchildren; " they cannot be excised; they are consistent with intention and of manifest significance, as conveying the testatrix's meaning, not to exclude the issue of those children and grandchildren " who may have died."

If she did not intend to create a gift by this sentence, there was no need for the use of the words. The tenth paragraph could have ended with a period after the word " grandchildren."

The learned court, in *Dwight* v. *Fancher (supra)*, speaking through the Appellate Division, said: " * * * she intended that Harvey

L. and his issue would take a share and she supposed she had carried out this intent," but that she has used words which exclude him and them. Had she died while the wills of 1900, 1903 and 1907 were effective, Harvey L. would have taken a trust share. The court evidenced a feeling and desire to do justice and carry out her intent, but the law denied the court the right to remake the will. The judicial statement by Justice VAN KIRK causes her intention to stand out in a conspicuous and distinctive manner. This declaration of intention is the spirit of the case. It portrays the family will written by a person moved by the impulse to give her fortune to those of the families of her father's coworkers. The court, bound by precedent, however, must and did decline the opportunity to adopt a new principle of law laid upon facts so potent with purpose and intent. The findings of fact in that case were that she did not know, at the date of her last will, of the death of Harvey L. Dwight, the son of the cousin. Neither did her attorney inquire, or know; he simply recopied the same tenth paragraph from each earlier will. The intervening death of Harvey L. came and so did the error in law caused by the failure to add to the tenth paragraph so as to include the issue of deceased children and grandchildren to fit the facts with regard to the share in the trust corpus. Her intention, however, remained.

I hold that Harvey A. Dwight and Jessie R. Dwight Orage together take an equal share in the remainder of the trust fund herein accounted for, and that Herwarth von der Decken and Elizabeth G. F. von Finckenstein together take another equal share in said remainder.

The second question relates to whether the estate of the life tenant shall participate in the division of the fund. I conclude that the estate of John Watson Dwight, the life tenant, takes an equal share because he had a vested remainder in the fund.

A person may have a remainder in fee which is devisable and alienable, dependent upon a trust for his own use to continue during life. This legal principle was referred to in *Howland* v. *Clendenin* (134 N. Y. 305, 310 [1892]) when the court said that the question had not been brought to the attention of the courts; while such a provision is very unusual, that undoubtedly a testator could give an estate to trustees and, upon the death of the latter, the trust estate to sink into and become a part of the estate of the beneficiary. (*Brown* v. *Richter*, 25 App. Div. 239.) The question was squarely presented in *Doane* v. *Mercantile Trust Co.* (160 N. Y. 494, 500), where the court said: " We perceive no incongruity in the testator's wife and daughter constructively taking the fund, as to which he died intestate, as his next of kin as of the time of his death. The

current of authority in this State is in harmony with the rule as laid down in England, and we are inclined to adopt it, notwithstanding any supposed *dicta* to the contrary." (*Eysaman* v. *Nelson*, 79 Misc. 304, and cases cited; *United States Trust Co.* v. *Terry*, 167 App. Div. 152; affd., 219 N. Y. 674; *United States Trust Co.* v. *Taylor*, 193 App. Div. 153; affd., 232 N. Y. 609.) In *Bishop* v. *Bishop* (257 N. Y. 40, 52) Chief Judge CARDOZO said: " * * * Cortlandt will have a remainder in fee, devisable and alienable, dependent upon a trust for his own use to continue during life. Such a remainder will be upheld, if the testator was willing to create it."

The direction in the will for the division is that the sum is to be divided " *equally between* said surviving children and grandchildren," and the new objects comprehended by the words " and the issue of any who may have died *per stirpes.*" In this final division equality was the thought of the testatrix. The use of the words " *per stirpes* " creates a stirpital distribution for the issue of predeceased children or grandchildren. The will reveals a purpose to divide in an equal manner between those who had vested remainders and the new persons. The new objects take " *per stirpes,*" according to the last two words of the paragraph. The word " *equally* " gets its meaning from the context of the will, the words of the testatrix. (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168; *Matter of Flint*, 118 Misc. 134; *Matter of Bailey*, 124 id. 466, 469; *Matter of Leverich*, 125 id. 130.)

The court will be carrying out the intention of the decedent by making an equal distribution among " said surviving children and grandchildren " and the issue *per stirpes* of predeceased children and grandchildren.

The corpus of the trust held for the life of John Watson Dwight will be divided into nine parts. One part each to (1) Harriette D. Bailey, (2) Jean B. Dwight, (3) Lucia K. Dwight, (4) the estate of John Watson Dwight, (5) Harvey A. Dwight and Jessie R. Dwight Orage, (6) Herwarth von der Decken and Elizabeth Grafin Finck von Finckenstein, (7) Comtesse Victoire Louise Niel, (8) Countess Pauline Andre de Gasquet James de la Mettrie, and (9) Count George Watson Pratt de Gasquet James.

As to the third question: The trustee was directed upon the death of the life beneficiary " to pay over and deliver the principal of the fund, with *all accumulated income* " to the ultimate remaindermen.

There is some $11,000 of accrued income upon the investments which was not yet due upon the date of death of John Watson

Dwight, the life tenant. The question is, who takes the accrued income — the estate of Mr. Dwight, or the ultimate remaindermen?

Section 204 of the Surrogate's Court Act provides for the apportionment of rents, annuities and dividends between persons having successive estates or interests in property under a will or deed of trust. These "payments of every description made payable or becoming due at fixed periods," are to be apportioned unless it "shall be expressly stipulated that no apportionment be made." In 1875█this statute superseded the common-law rule against apportionment. This section supplies the supposed intention and applies where the instrument fails to disclose intention.

The decedent made use of the words "accumulated income." It is contended that these words mean "accrued income." Every case in this State having to do with the question of whether section 204 of the Surrogate's Court Act is in effect turns on the words "accrued income" or words construed to be a stipulation against apportionment. The phrases "accrued income" and "accumulated income" have a distinct and separate meaning. The words "accrued income," as they are commonly used, mean income for the current period which was earned upon investments, but which was not yet payable to trustees at the time of the termination of the trust. (*Matter of Julliard*, 238 N. Y. 499; *Matter of Dexter*, 134 Misc. 195; *Matter of Balsamo*, 136 id. 113.)

The phrase "accumulated income," as commonly used, is not synonymous with "accrued income," and means something that is "piled up," "amassed." The meaning which the word "accumulation" has in the course of time come to have in our law is stated in the Century Dictionary as follows: "The adding of the interest or income of a fund to the principal, pursuant to the provisions of a will or deed preventing its being expended." (*Hascall* v. *King*, 162 N. Y. 134, 142; *Matter of Hartman*, 126 Misc. 862.)

The cases pointed to by counsel for the remaindermen are readily distinguishable from the facts of the instant case.

In *Matter of Julliard* (*supra*) the provision for the payment of the income, which may be actually received by the trustees, to Frederic A. Julliard, is coupled with a stipulation *against* "apportionment to him of income partially or wholly earned, but not yet due and payable."

In *Matter of Lamb* (182 App. Div. 180, 188; affd., 224 N. Y. 577) there was an expressed direction to the trustee to pay the principa' "together with all interest and income earned and accrued ana unpaid" upon the death of the life tenant to the remaindermen.

In *Matter of Dexter* (*supra*) the will directed the payment of the

residuary estate and " any *accrued* income thereon which has not been paid over to my sister."

In *Matter of Christensen* (140 Misc. 291) there was an expressed direction in the will to the effect that, in no case, shall anything be payable *after the death* of any individual beneficiary to the executors or administrators of such deceased beneficiary.

It is clear that each of these cases expressly stipulated against section 204 of the Surrogate's Court Act and provided terms of intention. Such is not the instant case. (See *Matter of Young*, 23 Misc. 223.)

In *Equitable Trust Co.* v. *Miller* (197 App. Div. 391; affd., 233 N. Y. 650) the trust agreement directed that the entire interest maturing after the death of the first life tenant should be paid by the trustee to the second life tenant. The court said this would amount to an accumulation prohibited by the statute. The trust agreement directed the trustee to collect the interest and pay the same " *as and when received.*" It was held that, in the absence of any express stipulation to the contrary, the estate of the life tenant of a trust to pay income is entitled to interest on municipal bonds accrued but not yet payable at the time of the life tenant's death.

In *Matter of Rogers* (22 App. Div. 428, 431) Mr. Justice Cullen tersely stated the proposition in these words: " But if a testator's intent is to make that principal which is income in the case of a trust of the nature of the one before us, such intent is not in conformity with law, but in express contravention of it."

In the instant case, if the decedent used the words " accumulated income " with the intention of overcoming section 204 of the Surrogate's Court Act, the will would be invalid to that extent as in violation of our statute against accumulations. (Pers. Prop. Law, § 16.)

The rule is well settled that, where direction for an accumulation is void and there is some other and legal disposition of the rents and profits, the statute does not apply; and, in such case, the direction for accumulation should be eliminated from the will. The direction to accumulate in the will can be stricken out and there still remains a valid disposition of the rents and profits. (*Crawford* v. *Dexter*, 178 App. Div. 764, 775; affd., 224 N. Y. 586.)

The word " accumulated " being out of the instant will, no other stipulation is expressed against section 204 of the Surrogate's Court Act and, consequently, the section applies.

The statutory rule of apportionment is one of fairness and reason and the draftsman would have used more apt words than " accumulated income " if the testatrix intended to do as claimed by the

remaindermen. She gave " the income and profits " to each trust beneficiary during his or her natural life without limitation.

It is my opinion that the intention of the testatrix in using the words " all accumulated income " was merely to make a complete disposition of all property in each trust, whenever each life estate fell in and that it referred solely to the income accrued or accumulated between the termination of the life estate and the date of distribution to the remaindermen. The draftsman probably considered that, between the life tenant's death and the payment to ultimate beneficiaries, some income would accrue or accumulate. The will directed the trustees to pay over and deliver the principal of the fund. But in practice, payment is not coincident with the event of the death of the life beneficiary. (*Matter of Lamb*, 182 App. Div. 180, 189.) The word " accumulate " as used has a clear meaning and it must be accepted as disclosing the intent.

Counsel for remaindermen cite two cases in New Jersey construing the words " accumulated income."

These cases are not important and are of no particular value with reference to the instant question.

In *Lippincott* v. *Ridgway* (11 N. J. Eq. 526 [1858]) the will provided for the payment of " all the interest that shall arise thereon *yearly*, as it *shall become due*," and upon the death of the life tenant, to pay over the fund " with its accumulated interest." It was claimed that, if the interest was allowed in any way to accumulate in the hands of the trustee, the testatrix annexed it to the trust, and that it followed the disposition of that fund. The court said that the words " accumulated interest " have no legal technical meaning; that the word " accumulated " in the connection she made use of it meant nothing more than that accrued interest, or interest growing due upon the fund and undisposed of by her. It was also held that all interest due had been received by the life tenant — the only interest in hand at the time of the accounting was interest *accruing* in the lifetime of the life tenant. This decision appears to be a proper disposition of the case as the life tenant was limited to yearly interest as it shall become *due*. On these facts, the money in hand at accounting time was " accrued " interest as the court held. Whether accrued or accumulated, it must pass to the remaindermen as the stipulation was that the life tenant was only to receive it when it shall become *due*.

The other case is *Lewis* v. *Towar* (45 Atl. 999 [1900]). In this case the trustee was to pay the interest or " *so much thereof as she may desire* " to the life beneficiary and the balance to other persons. The court here construed these words as affecting money *not desired*, to mean accrued interest, because of the express direction for the

distribution of all income during the term of the trust which was not desired nor paid over to the life beneficiary.

I hold that the words used by the testatrix did not constitute a direction against apportionment and that the estate of John Watson Dwight is entitled to the accrued income in the hands of the trustee to the date of his death, pursuant to section 204 of the Surrogate's Court Act.

Submit decree in accordance with these views, with notice to all attorneys appearing.