---

### WESTCOTT et al. v. HIGGINS et al.

(Supreme Court, Appellate Division, First Department. June 23, 1899.)

WILLS—CONSTRUCTION.

    A will bequeathed a sum to the children of testator's sister, providing that, in the event either of such children died leaving issue surviving testator, the sum which the one so dying would have taken was to go to his issue, but, if either died without leaving issue surviving testator, the sum which the one so dying would have taken was to go to the survivors of such children, and to the issue of such of them as should have previously died leaving issue; such issue to take the share his parents would have taken if living. *Held*, that the issue of such of the sister's children as died before the making of the will took nothing thereunder.

Appeal from special term, New York county.

Action by Clarence M. Westcott and another against John H. Higgins, as executor of the will of Nathaniel D. Higgins, deceased, and others, to recover as legatees under the will. From a judgment of special term dismissing the complaint (53 N. Y. Supp. 109), plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

Henry W. Sackett, for appellants.

Lewis Cass Ledyard, for respondents.

BARRETT, J.   The plaintiffs seek to recover a legacy which they claim under the will of Nathaniel D. Higgins.   The will was made in 1878, and Mr. Higgins died in 1882.   The particular clause of the will under which the plaintiffs claim is the seventh.   It reads as follows:

"Seventh. I give and bequeath unto the children of my sister Ellen W. Perley each the sum of ten thousand dollars. In the event, however, either of said children shall die before me, leaving issue surviving me, then and in that event I give and bequeath the sum of ten thousand dollars which the one so dying would have taken if living unto his or her issue. If, however, either of said children shall die before me without leaving issue surviving me, then and in that event I give and bequeath the sum of ten thousand dollars which the one so dying would have taken if living unto the survivors or survivor of them, said children of my said sister Ellen W. Perley, and to the issue of such of them as shall have previously died leaving issue; such issue to take the part or share which his, her, or their parent or parents would have taken if living."

Ellen W. Perley had four children.   Two of them survived Mr. Higgins.   One died in 1871, leaving one child, who died before the making of the will; and one died in 1875, leaving two children, the present plaintiffs.   The question is, do the issue of a child of Mrs. Perley who died before the execution of Mr. Higgins' will take under the seventh clause?   It is to be observed that the clause in question is one of six of precisely the same tenor, in each of which Mr. Higgins makes similar provisions for the children of his brothers and sisters.   The scheme of benefaction was an elaborate one, and was evidently well considered, and carefully drafted by skillful hands.   There is no reason, therefore, why we should hesitate to apply to these six clauses well-settled rules of interpretation. The intention of the testator was apparently in accordance with these rules, and we find nothing whatever in the will indicative of any different intention.   He premises with a gift of $10,000 to each of the children of his sister Ellen W. Perley.   Standing alone, this is a primary gift to such of the then living children of Mrs. Perley as should survive the testator.   It is certainly not a gift to nonexistent persons, and consequently it does not bring within the class the children of Mrs. Perley who were dead at the time the will was made.   What follows was plainly substitutionary.   If nothing had been added to the primary gift, there would have been a lapse upon the death of any of the then living children prior to the death of the testator.   The substitutionary clauses which follow were plainly inserted to prevent such a lapse.   No clearer words of substitution could well be framed than those of the first substitutionary clause which follows the primary gift.   The sentence opens with the words, "In the event, however."   This clearly refers to a future, not a past, event.   The use of the word "however," following the words "in the event," lends additional force to this view.   Then consider the reference which follows to the "said children."   Who are the "said children?"   Are they not the children who are the objects of his primary gifts?   These latter form the class, and the reference throughout the clause to the children of Mrs. Perley, or to either of said children, are references to this class.   And, further, there is no trace of an intention to supple-

ment the primary gift to the then living children of Mrs. Perley with an additional gift to the issue of her then dead children. This is emphasized by the form of the gift to the issue of a dead child: "Then and in that event I give and bequeath the sum of ten thousand dollars which the one so dying would have taken if living unto his or her issue." This, in its natural import, refers to some member of the class who, being alive when the will was made, would have taken if living at the death of the testator. Then look at the second substitutionary clause. Here we find provision for the death of "either of said children without leaving issue surviving me." What then? Why, "then and in that event" he gives the sum of $10,000—again which the one so dying would have taken if living—unto the survivor or survivors of the "said children of my said sister," and to the issue of such of them "as shall have previously died leaving issue." There is a double significance in this second substitutionary clause. It repeats and emphasizes the substitutionary phrases of the first substitutionary clause. If it referred to children of Mrs. Perley who were dead at the time of the making of the will, it was certainly an odd and roundabout way of adding to the primary gift to her then living children. Why speak of the possible event of a child dying without leaving issue, when that child had already died without leaving issue? It is suggested that Mr. Higgins may not have known which of Mrs. Perley's children were dead and which were alive when he made his will. That may be, and it may also be that he did know. We cannot speculate on that head. There is nothing in the language of his will to indicate that he was providing for lapses of memory or for insufficient information with regard to family history. But the most significant expression in the second substitutionary clause is found in connection with the gift to the issue of the survivors. The language is, "to the issue of such of them as shall have previously died leaving issue." The plaintiffs lay great stress upon this phraseology. It seems to us, however, that, in the connection in which it is used, this form of language but furnishes an additional argument against the plaintiffs' contention. It certainly shows that the testator gave due weight to grammatical precision. He did not loosely attribute the same sense to the words "shall die before me" that he did to the words "shall have previously died." When he meant "shall have previously died," he said so. When he meant "shall die before me," he said so. It will be observed that he used the expression "shall die before me" twice,—once in the first substitutionary clause, and once in the second; that is, in the very clause in which he used the words "shall have previously died."

The authorities support this construction. They recognize that the test is whether the gift to the issue is primary or substitutionary. If it is primary, the issue of children who predeceased the will take. If substitutionary, they do not, for the simple and obvious reason that, to take by way of substitution, one must point to the original legatee in whose place he is to stand; and that he cannot do when there was no such original legatee at the time of

the making of the will,—he who might have been such having died prior thereto.    Thus, in Tytherleigh v. Harbin, 6 Sim. 329, the gift was "unto or amongst all and every and such one or more of the child or children of R. T. who shall be living at the time of his decease, and the issue of such of them as shall be then dead leaving issue." This was held to be an original and substantive gift to the issue of the deceased children of R. T., quite the same as the original and substantive gift to his children living at his decease. The gift was to the "children" and the "issue."    There was nothing substitutionary in it, or in any part of it.    The rule on this head is extremely well put by Mr. Jarman (2 Jarm. Wills [5th Am. Ed.] p. 775), as follows:

"Where, however, the children of the deceased person found their claim, not on a mere clause of substitution, but on a substantive, independent, original gift, comprehending them concurrently with another class of objects, the doctrine of the preceding cases does not apply, and the gift will extend to the children of persons who were dead when the will was made."

This admirable expression, "comprehending them concurrently with another class of objects," illustrates and clarifies many cases on the same line as Tytherleigh v. Harbin, which otherwise might seem to conflict with the well-known case of Christopherson v. Naylor, 1 Mer. 320, where the substitutionary rule was originally laid down. There the bequest was "to each and every of the child and children of my brothers and sisters, A., B., C., & D., who shall be living at the time of my decease."    Here the bequest is, in substance and effect, "to each and every of the child and children of my brothers and sisters, A., B., C., D., E., & F., living at the time of my decease." There he says that "if any child or children of my said brothers and sisters, or any of them, shall happen to die in my lifetime, and leave issue at his or her decease, then and in such case  *  *  *  I give and bequeath the same to his, her, or their issue." The expression, "shall happen to die in my lifetime, and leave issue," does not vary substantially from the expression here,—"shall die before me, leaving issue."    The cases are practically identical.    Sir W. Grant, M. R., there held that the language of the will imported nothing but a substitutionary gift to the issue of the nephews and nieces.    "The nephews and nieces," he said, "are here the primary legatees.    Nothing whatever is given to their issue, except in the way of substitution.    In order to claim, therefore, under the will, these substituted legatees must point out the original legatees in whose place they demand to stand.    But, of the nephews and nieces of the testator, none could have taken besides those who were living at the date of the will.    The issue of those who were dead at that time can consequently show no objects of substitution, and to give them original legacies would be, in effect, to make a new will for the testator."    This case has been repeatedly followed in England, and cited with approval in this state.    An attempt was made in England by Vice Chancellor Malins to deviate from the rule there laid down (see In re Potter's Trust, L. R. 8 Eq. 52, and In re Lucas' Will, 17 Ch. Div. 788), but it was quite unsuccessful. Christopherson v. Naylor was approved in Re Thompson's Trusts,

2 Wkly. Rep. 218; In re Hotchkiss' Trusts, L. R. 8 Eq. 643; In re
Chapman's Will, 32 Beav. 382; In re Barker, 47 Law T. (N. S.) 38;
In re Webster's Estate, 23 Ch. Div. 737; and In re Chinery, 39 Ch.
Div. 614,—and finally it was adopted by the court of appeal as the
settled law of England.    Groves v. Musther, Law J. 59 Ch. 296; In
re Wood, 63 Law J. Ch. 790.   In Groves v. Musther, the testatrix di-
rected her residuary estate to be equally divided between her neph-
ews and nieces not before named, "but, should any of them be dead
before me, I then direct that his or her share shall be equally di-
vided between his or her children."   It was held that the children
of nephews and nieces dead at the date of the will were not enti-
tled to take under the bequest.    Cotton, L. J., alluded to the fact
that Mr. Justice Kay, in the court below, had decided the case on
the authority of Christopherson v. Naylor, and said that Justice
Kay was right in so doing; adding that "this case is covered, not
only by the decision in Christopherson v. Naylor, but also by the
reasoning there given."    Lord Lindley, in his opinion in the same
case, said:

"I have long been familiar with Christopherson v. Naylor.  That decision
has often been criticised, and occasionally disapproved, and in particular by
Vice Chancellor Malins in Adams v. Adams. L. R. 14 Eq. 246; but I cannot
agree with him in his criticism.  Personally, I approve that decision, and I
have always understood it to be good law."

In Re Wood, the testator bequeathed his residue upon trust to
invest and pay the income of the investments equally among all
his children during their respective lives, and upon the death of
any such child, whether before or after the testator's death, to hold
the corpus, whereof the income was or would have been payable to
such child, upon trusts for the benefit of the child or children of
such child.    It was held (affirming Mr. Justice Kekewich) that a
grandchild of the testator, whose parent died before the date of
the will, was not entitled to a share in the residue.    Lindley, L. J.,
said:

"As to the authorities, with all due deference to the decisions of Vice Chan-
cellor Malins in Re Potter's Trust, and in Re Lucas' Will, I think that Chris-
topherson v. Naylor, Groves v. Musther, and In re Chinery govern the case."

Lopes, L. J., said he was of the same opinion.    Davey, L. J., said:

"As to the residuary gift, I think the question is concluded by authority.
Notwithstanding the opinion of Vice Chancellor Malins expressed in Re Pot-
ter's and In re Lucas' Will, and frequently repeated, I think Christopherson v.
Naylor was rightly decided, and must be followed.  It has been frequently ac-
cepted by the court of appeals in subsequent cases, including Groves v. Mus-
ther."

See, also, many cases cited in Jarm. Wills (5th Am. Ed.) pp. 771–
774.

In this state Christopherson v. Naylor was referred to approving-
ly in Re Crawford, 113 N. Y. 375, 21 N. E. 142, and Palmer v. Dun-
ham, 125 N. Y. 68, 25 N. E. 1081.   In the Crawford Case, Judge An-
drews carefully analyzes the two classes of gifts,—primary and
substitutionary,—and points out the effect of each upon the ques-
tion whether the issue of predeceased members of the class dying

before the date of the will take.    In the latter case, Judge O'Brien, in citing Christopherson v. Naylor with approval, said:

"The gift of a remainder was to a class, followed by a substitutionary gift of the share of any one in the class who should die, to the next of kin of this deceased person.    No one can take under this substitutionary clause who cannot show that his parent might have been one of the original class."

His concluding remarks are peculiarly applicable to the present case:

"Bequests similar to the one now under consideration have been the subject of much controversy in regard to the right of the issue of predeceased children to take when the words used in the will were left open to construction.    But, as was said in Re Crawford, 113 N. Y. 366, 21 N. E. 142, we are relieved in this case from the necessity of a critical examination of the cases on the general subject, for the reason that the language of the will is so plain as to remove any doubt about the meaning of the testatrix.    She evidently intended that the fund invested should, upon the death of her niece, pass to the children of that niece who were living when the will was made, and the next of kin of any of them who subsequently died."

The intention here is as clear as was the intention there, and no doubt is left, after the closest scrutiny of the entire will, as to Mr. Higgins' meaning.

The appellants rely upon Teed v. Morton, 60 N. Y. 502.    The provision there, however, brought the case within the rule laid down in Tytherleigh v. Harbin, supra.    The gift was to the testator's "surviving children, and the issue of such of them as may have died leaving issue."    Thus, the issue of such as might have died leaving issue were "comprehended concurrently" with the surviving children.    The gift to the issue there was thus primary, independent, and substantive.

Upon both principle and authority, therefore, our conclusion is that the issue of such of Mrs. Perley's children as had died prior to the making of Mr. Higgins' will took nothing under the seventh clause of his will.

It follows that the judgment appealed from was right, and should be affirmed, with costs.    All concur.