In the Matter of the Judicial Settlement of the Account of Proceedings of the UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee of the Trust Created by the Last Will and Testament of EMILY A. WATSON, Deceased, for the Benefit of JOHN WATSON DWIGHT and Remaindermen.*

JEAN B. DWIGHT and Others, Appellants; UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee, etc., and Another, Respondents.

Second Department, February 10, 1933.

---

* Modfg. and affg. 144 Misc. 213.

*Vermont Hatch* [*Windsor B. Putnam* and *Charles R. Sellers* with him on the brief], for the appellants Jean B. Dwight, Lucia King Dwight and Harriette D. Bailey.

*Edgar G. Wandless*, for the appellants Pauline Andre de Gasquet James de la Mettrie and George Watson Pratt de Gasquet James.

*Thomas W. Kelly*, for the appellant Victoire Louise Niel.

*William S. Siemon*, for the appellants Eleanor H. Marihugh, Mary D. A. Smith, Lyman D. Bailey, Adams Bailey, Harriette B. Austin, Sarah W. Bailey and Herbert O. Bailey, Jr.

*Frank L. Wiswall* [*A. Kendall Roberts* with him on the brief], for the appellants Harvey A. Dwight, Jessie R. Dwight Orage and Elizabeth von der Decken Finck von Finckenstein.

*C. Alexander Capron* [*H. Vincent Smart* and *William F. Hamilton* with him on the brief], for the appellant Herwarth von der Decken.

*William A. W. Stewart* [*Arthur McCausland* with him on the brief], for the respondent United States Trust Company of New York, as executor of the will of John Watson Dwight, deceased.

KAPPER, J. John Watson Dwight was one of seven life tenants who shared in the residuary trust fund under the trust provision in controversy here. The remainder of his particular share, in accordance with the terms of that trust, would have gone to his issue. But he was unmarried and left no issue surviving him. The main question presented here is the disposition of that portion of the corpus of the trust fund of which he had the income during his life. The trust provision in its entirety reads:

" *Tenth.* All the rest, residue and remainder of my property,

both real and personal, of whatever kind or nature and wherever situate, as well that which I may hereafter acquire as that which I now possess, I give, devise and bequeath to the United States Trust Company of New York, in trust, however, to divide the same into as many shares or portions as there may be children of my cousin, Harvey A. Dwight, and grandchildren of my cousin, George W. Pratt, surviving at the time of my death, and to invest and keep invested one such share or portion for the benefit of each child of my said cousin, Harvey A. Dwight and each grandchild of my said cousin, George W. Pratt, then surviving, and to pay over the income and profits therefrom to the child or grandchild for whose benefit such fund is so held, during his or her natural life, and upon his or her death to pay over and deliver the principal of the fund with all accumulated income to his or her issue, *per stirpes*, and in default of such issue, I direct that the same be divided equally between said surviving children and grandchildren, and the issue of any who may have died, *per stirpes*."

There are three sets of claimants for this remainder of the deceased John Watson Dwight's share.

1. The remaining six *cestuis que trustent*, all of whom are alive and are parties to this proceeding, claim that those who qualified as life tenants are alone entitled to share this remainder. Their contention, briefly stated, is that the trust was set up solely for the benefit of the " children of my cousin, Harvey A. Dwight, and grandchildren of my cousin, George W. Pratt, surviving at the time of my death," and that in default of issue of John Watson Dwight they are entitled to a division of such share of the trust fund, absolutely, under that clause which reads that the " same be divided equally between said surviving children and grandchildren, and the issue of any who may have died, *per stirpes;* " in other words, that this language confines the division to them as " surviving children and grandchildren."

2. The children of Harvey L. Dwight and of Elizabeth Bleecker von der Decken (two persons who would have qualified as life tenants had they not predeceased the testatrix) claim that they are entitled to a share, contending that the words " in default of such issue, I direct that the same be divided equally between said surviving children and grandchildren, and the issue of any who may have died, *per stirpes*," applies to them. They stress the words " and the issue of *any* who may have died," claiming that the failure to insert words of limitation after the word " any " shows that the testatrix intended that the division of such remainder was to include them as issue of " children and grandchildren " without the restriction of the word " surviving."

3. The beneficiaries under the will of John Watson Dwight, deceased, claim that they are entitled to a share with the six living *cestuis que trustent*, excluding the children of Harvey L. Dwight and of Elizabeth Bleecker von der Decken, on the ground that John Watson Dwight had a vested interest in this remainder.

The claimants in the first and third groups in the foregoing classification also contend that by reason of a decision in a former proceeding construing the trust provision now under scrutiny here, brought in 1925 by Harvey A. Dwight and Jessie Dwight Orage, children of Harvey L. Dwight, the determination is *res adjudicata* as to them and *stare decisis* as to the other claimants in the second group, who were not parties to that action but who stand in the identical position of those who were parties.

The learned surrogate rejected this contention of *res adjudicata* and *stare decisis*, holding that the previous determination did not adjudicate the present issues.

He agreed with the claimants in the second group that they were entitled to share, *per stirpes*, with the claimants in the *first* group in the division of this remainder.

He agreed with the claimants in the *third* group that John Watson Dwight, the decedent, had a vested interest in a remainder to be divided in default of issue of the life tenant, and were, therefore, entitled to an equal share.

He, therefore, divided this remainder into nine parts, giving one part to each of the six still living *cestuis que trustent*, one part to be divided between the children of Harvey L. Dwight, one part to be divided between the children of Elizabeth Bleecker von der Decken (each of whom, as stated, predeceased the testatrix) and one part to the estate of John Watson Dwight, deceased.

There is little question as to the correctness of the surrogate's determination to reject the plea of *res adjudicata* and *stare decisis*. An examination of the record of the former proceeding, which is incorporated in its entirety in the present record, shows that plaintiffs there sought to be included as life tenants under this trust provision by having the word " children " in the description " *children* of my cousin, Harvey A. Dwight  *  *  *  *surviving* at the time of my death " construed to mean *issue*, so that they would take as grandchildren. The conclusion of the trial justice was that the testatrix meant precisely what she said when she used the word " children," and the consequent judgment was unanimously affirmed both in the Appellate Division, Third Department, and in the Court of Appeals. (*Dwight* v. *Fancher*, 217 App. Div. 377; 245 N. Y. 71.) Although the following finding was passed upon in the manner shown, viz.:

" 43. The words ' issue of any who may have died, *per stirpes* ' used at the end of the Tenth paragraph by said testatrix in said Will referred back to the children of Harvey L. Dwight.

" Refused, except I find it referred back to the children surviving the death of said testatrix," and this finding is pertinent enough in so far as concerns the present controversy, it was not at all necessary to the determination actually made which settled the question of the possible participation of those plaintiffs as life tenants, whereas the question of their participation as alleged remaindermen is here and now involved. If the claimants in the second group are legally entitled to share in the remainder or remainders of this trust fund, which totals more than $7,000,000, they should not be estopped because of the presentation of this ill-advised proposed finding, which was refused, and a substitute therefor, equally irrelevant to the issue, set forth. (*Donahue* v. *New York Life Ins. Co.*, 259 N. Y. 98, 102, 103.)

The testatrix was a spinster, over eighty years of age at the time of her death on February 1, 1924, and left an estate of approximately $12,000,000. Her will is a lengthy and comprehensive document bequeathing many legacies and setting up a number of trusts for specifically named individuals. The proof of extrinsic circumstances surrounding the making of her will and codicil amply substantiates the observation of Judge VAN KIRK, writing for the Third Department (*Dwight* v. *Fancher*, 217 App. Div. at p. 381): " Her gift to members of the family was not, so far as we know, induced by any special regard for, or acquaintance with, the descendants of Harvey A. Dwight; she had not an intent to benefit individual children, but to make return in some way in response to her sentiment or feelings. She made no effort to learn which of the children of Harvey A. Dwight were living and which, if any, were dead. She apparently was content to satisfy her feeling by giving to the living children only, making no provision for issue of deceased children."

This reference to her relationship and viewpoint with respect to the descendants of Harvey A. Dwight applies with equal force to the descendants of her other cousin named in this trust provision, George W. Pratt.

Now to consider the effect of the words in the will which determine the disposition of the remainder in question, " and in default of such issue, I direct that the same be divided equally between said surviving children and grandchildren, and the issue of any who may have died, *per stirpes.*"

In determining the effect of this last quoted clause consideration

must necessarily be given to the trust provision in its entirety, the context of which seems plain and unambiguous.

The learned surrogate construed the direction as to remainder as above quoted to include the claimants of the second group as persons qualified under the words " and the issue of any who may have died, *per stirpes*," despite the fact that the only designated classes comprehended elsewhere throughout the entire trust were the *surviving children* of Harvey L. Dwight and the *surviving grandchildren* of George W. Pratt, and their issue.

The obvious harshness of the arbitrary line of demarcation of survivorship laid down in this will, which served to exclude collaterals of the same degree of blood relationship as those included, may have had its effect in the construction formulated by the learned surrogate. But, granting all of the premises which he assumes, the conclusion he reached does not, in my opinion, follow. For the purpose of sharply presenting the vital issue, let us follow his reasoning. The learned surrogate first substitutes, in place of the classes (surviving · *children* and *grandchildren*) described in the will, the names of the individuals who took as members of those classes. The question of whether a gift is to a class or to specific persons identified and characterized in the will as a class, so as to enable them to be considered as having been referred to *nominatim*, is often material in considering whether a bequest has lapsed by reason of a potential beneficiary's predecease of the testator. (*Matter of Russell*, 168 N. Y. 169; *Matter of King*, 200 id. 189; *Matter of McCafferty*, 142 Misc. 371; affd., 236 App. Div. 678.) No such question is here presented, but if we were to adopt that procedure the latter portion of the provision of the will would read: " and in default of such issue, I direct that the same be divided equally between John Watson Dwight, Jean B. Dwight, Lucia King Dwight, Harriette D. Bailey, Comtesse Victoire Louise Niel, Countess Pauline Andre de Gasquet James de la Mettrie and Count George Watson Pratt de Gasquet James, and the issue of any who may have died, *per stirpes*."

Such a reading would, if anything, accentuate the relationship of the word " any " to the persons specifically named, rather than to show, as was held below, that the word " any " was intended to introduce, for the first time, a new and all-pervading class of alternative remaindermen, namely, the issue of *any* children of Harvey A. Dwight and *any* grandchildren of George W. Pratt.

Next, the learned surrogate considered the original wording of the clause and directed attention to the word " said," viz., " I direct that the same be divided equally between *said* surviving children and grandchildren, and the issue of any who may have

died, *per stirpes.*" The use of this word (it was in effect said) created, for the benefit of the surviving children and grandchildren given life tenancies, a vested interest in the remainder of one of their number, subject to be divested in the event that such deceased member left issue, who in that event would take the remainder. This is a highly debatable proposition and forms the basis of the discussion and determination upon another phase of the case. But, to adopt it for present purposes, it led the surrogate to this conclusion: " In the instant case, the testatrix's use of the words ' issue of *any* who may have died ' could not have referred to the issue of the ' *said surviving children and grandchildren,*' because the *said* surviving children and grandchildren already had *vested* remainders and their interest would have passed by descent or by will. The words ' issue of *any* who may have died,' would be tautological, meaningless and needless, and could only supplement the full primary gift already made. Why speak of a person taking when that person already owns? Of course, there is no occasion for it and the testatrix did not so intend. She gave a new, independent gift, ' comprehending them concurrently with another class of objects.' The word ' *any* ' as used is a pronoun and is defined by the lexicographers as meaning ' all,' ' every,' ' an indefinite number,' and so used, has a comprehensive meaning. Words in common use are to be taken in their ordinary sense. * * * To what noun does the pronoun ' any ' refer? Not to the said surviving children and grandchildren, because they already had vested interests. It refers to the issue of any (child or grandchild) of said cousins, who *may have* died, *per stirpes.*"

It seems to me that the learned surrogate incorrectly held that the words " said surviving children and grandchildren " created vested remainders and that, therefore, the words " issue of any who may have died " were meaningless. Even so, the direction would remain potent to the end that such surviving children and grandchildren who were dead at the time of disposition of a remainder could not have already alienated it by will, for such remainder was plainly limited to their issue.

If the phrase " and the issue of any who may have died, *per stirpes,*" could not have referred to the " surviving children and grandchildren," then (further reasoned the learned surrogate), taking into consideration the conjunction " and " coupling up the surviving children and grandchildren with the issue of any who may have died, the testatrix meant to and did make a direct bequest of a defeasible interest in remainders, without the qualifying word *surviving*, to any children of Harvey A. Dwight and grandchildren of George W. Pratt. But it is urged that, unlike the

members of the classes of life tenants, the members of this new class "take contingently and as a class, and are confined to those persons who come within the term at the date when division or distribution is directed to be made," and that "There is no vesting as to them until the class is determined."

This construction does violence to what seems the plain, natural and unambiguous language of the will. This testatrix, before considering the objects of her bounty under the residuary clause, had provided by the numerous paragraphs of her will for all of the individuals whom she wished to remember. This residuary clause is composed of a single sentence. It is replete with the concentrated intention to provide for the surviving children of Harvey A. Dwight and grandchildren of George W. Pratt and for their issue. Life tenancies were provided for such surviving children, the remainders for their issue. She did not provide for them as personalities; she apparently did not know them; she was not interested in them as such; her entire concern was with abstract classifications rather than human beings. In default of issue to whom a remainder should come, it was to go to the members of the same classes "and the issue of any who may have died, *per stirpes*." To say that in the last gasp of her expressed intent she introduced, for the first time, an entirely new and independent class of beneficiaries solely for the purpose of sharing a remainder if the primary object was defeated, to the exclusion *pro rata* of the specified classes of beneficiaries under the nebulous characterization of "any," is repugnant to the intention embodied in this competently drawn instrument.

The gift to "the issue of any who may have died, *per stirpes*," is substitutional, *i. e.*, the issue instead of the life tenant if the latter has died. This is the ordinary acceptation of similar phrases. (See *Wescott* v. *Higgins*, 42 App. Div. 69; affd. on that opinion, 169 N. Y. 582; *Palmer* v. *Dunham*, 125 id. 68; *Staples* v. *Mead*, 152 App. Div. 745.)

*Teed* v. *Morton* (60 N. Y. 502), upon which considerable reliance is placed, shows the striking distinction between that case dealing with testator's own children and the one at bar dealing with collaterals of a remote degree. It is emphasized by Judge ANDREWS' observation, viz. (p. 505): "It is apparent, from the other provisions of the will, that there was no general purpose, on the part of the testator, to exclude the issue of children who were deceased when the will was made from sharing in his estate."

Children are the natural objects of a parent's bounty; here the collaterals who claim this direct gift were not mentioned either in this paragraph or in any other portion of the will. The general

purpose to exclude all others by the qualifying word " surviving " is manifest.

This brings us to the second question of construction, namely, the nature of the interest created by the words " *said surviving children and grandchildren* " in the direction that in default of issue a remainder should be divided equally between them and the issue of any who may have died, *per stirpes*. The surrogate has held that this direction created a vested remainder in the life tenants as to all of the shares, subject to be divested only in the event of issue taking the remainder of a given share upon death of their ancestor, the life tenant. This holding proceeds from the premise that the testatrix fixed the class *nominatum* at the time of her death and that the word " said " refers to such individuals. The practical effect of this holding is — as is illustrated by the death of John Watson Dwight — to permit a life tenant, before his death without issue, to dispose by will of a share in such remainder over of his own life tenancy to those outside of the blood.

This is not only incongruous but is the very thing testatrix sought to prevent in so far as she was able to make provision to the contrary. The learned surrogate himself speaks of and reiterates the fact that this was " a family will." The objects of concern were the classes testatrix set up and the issue of those classes. When, in the above phrase, testatrix used the word " said " she was not referring to individuals; she was referring to the classes of " surviving children and grandchildren " she had previously denominated. It is to be sharply noted that she did not create any estate by direct words of gift for these surviving children and grandchildren in default of issue to take a remainder; she merely directed a division among them — not as objects of primary regard, for she had the issue of the deceased life tenant in mind in that respect — but as a last resort " in default of such issue." (See *Matter of Baer*, 147 N. Y. at p. 354.) Again the classes are set up for the purpose of keeping the defaulting remainder within the blood. But the qualification of survivorship is as strong as in its original application. The effect of the setting up of a class with direction to divide among its members in the future is to create a contingent interest in the members of that class requiring them to survive the time of distribution in order to take. In other words, as has been so often said, " Futurity is annexed to the substance of the gift." Here, membership within the class was not only contingent as to survivorship but the class itself was incidental or substitutionary to the taking by the issue of the deceased life tenant.

Holding, therefore, that the words " said surviving children and

grandchildren " did not create a vested interest in the remainder of a life tenant dying without issue, but that a class was created contingent upon survivorship, removes the foundation of the argument that the language " and the issue of any who may have died, *per stirpes* " refers to all children and grandchildren (on the theory that the words would otherwise be meaningless). These words now assume what seems to be the natural intendment, *i. e.*, that " issue of any " refers to the " said surviving children and grandchildren " who had died prior to the decease of another life tenant who left no issue.

The conclusion to which I come is that the remainder of the life tenancy of John Watson Dwight is limited to the children of the testatrix's cousin Harvey A. Dwight and the grandchildren of her cousin George W. Pratt who were living at the time John Watson Dwight died. Those who take, therefore, are (1) Harriette D. Bailey, (2) Jean B. Dwight, (3) Lucia K. Dwight, (4) Comtesse Victoire Louise Niel, (5) Countess Pauline Andre de Gasquet James de la Mettrie, and (6) Count George Watson Pratt de Gasquet James — the six members of group No. 1 as above classified.

We agree with the learned surrogate respecting the division of income on the life estate of John Watson Dwight and also with his disposition of the matter of allowances.

The proceeding should be remitted to the surrogate to proceed accordingly, and as modified the decree should be affirmed, with costs payable out of the estate to all parties appearing and filing briefs.

LAZANSKY, P. J., YOUNG and TOMPKINS, JJ., concur; SCUDDER, J., dissents and votes for affirmance.

Decree of the Surrogate's Court of Westchester county modified by dividing the remainder dependent upon the life of John Watson Dwight into six equal parts, one of each of said equal parts to be given to those children of Harvey A. Dwight and grandchildren of George W. Pratt who survived said John Watson Dwight, deceased. As so modified the decree is affirmed, with costs, payable out of the estate, to all parties appearing and filing briefs. The proceeding is remitted to the surrogate to make a decree accordingly.