In the Matter of the Estate of EMILY A. WATSON, Deceased.*

Surrogate's Court, Westchester County, October 19, 1933.

* But see *Matter of Lydig* (149 Misc. 598).

*Wiswall, Walton, Wood & MacAffer* [*Frank L. Wiswall* of counsel], for Harvey A. Dwight and others.

*William S. Siemon,* for Eleanor H. Marihugh and others.

*Taylor, Blanc, Capron & Marsh* [*H. V. Smart* of counsel], for Herwarth von der Decken.

*Arthur McCausland,* for the executors.

*Stewart & Shearer,* for the United States Trust Company of New York, trustee.

*Lynn, Wandless & Lanier* [*Edgar G. Wandless* of counsel], for Pauline Andree de la Mettrie and another.

*Coudert Brothers,* for Victoire Louise Niel.

*White & Case,* for Jean B. Dwight and others.

SLATER, S. The issue before me at this time is the application for allowances to the parties for their counsel fees incurred in this proceeding pursuant to section 278 of the Surrogate's Court Act.

The petition on the accounting was filed March 17, 1932. The prayer for relief asked that petitioner's account of proceedings as trustee of the trust created by the will of Emily A. Watson for the benefit of John Watson Dwight and remaindermen might be judicially settled and allowed, with directions to petitioner as to the disposition to be made of the property, both principal and income. An amended petition was filed May 20, 1932. The prayer was the same as in the original petition asking in addition that the will of Emily A. Watson be *construed.* The amended petition sets out that Harvey A. Dwight and Jessie R. Dwight Orage, children of Harvey L. Dwight, a predeceased son of the cousin, Harvey A. Dwight, claim each one-eighth in the trust fund accounted for herein, and that the great-grandchildren of George W. Pratt, a cousin of decedent, claim an interest in such fund. A citation was issued directed to such children and grandchildren. They appeared by counsel.

The questions relating to the construction of decedent's will were as follows:

1. Whether the children and grandchildren of predeceased cousins took a share in the remainder of the trust fund for the benefit of John Watson Dwight;

2. Whether the estate of the life beneficiary should participate in the division of the fund;

3. Whether the trustee was directed upon the death of the life beneficiary to pay over and deliver the principal of the fund with all accumulated income to the ultimate remaindermen.

After a hearing upon the petition and argument by attorneys for all the parties herein, a decree was made July 5, 1932, settling the trustee's account and construing the will. (The opinion is found in 144 Misc. 213.) The court, in construing the will, held that the children of Harvey L. Dwight, a predeceased son of decedent's cousin, Harvey A. Dwight, and the two children of a predeceased grandchild of decedent's cousin, George W. Pratt, became entitled to share *per stirpes* with the surviving children of decedent's cousin, Harvey A. Dwight, and the surviving grandchildren of decedent's cousin, George W. Pratt, in the remainder of the trust fund herein accounted for.

The decree directed to the attorneys Wiswall, Walton, Wood & MacAffer, appearing for Harvey A. Dwight, Jessie R. Dwight Orage and Elisabeth Von der Decken Finck Von Finckenstein, an allowance of $6,000; to Taylor, Blanc, Capron & Marsh, the attorneys for Herwarth Von der Decken, $3,000; to William S. Siemon, attorney for Eleanor H. Marihugh and others, $1,000.

Upon appeal to the Appellate Division (237 App. Div. 625) the decree of this court was modified, Scudder, J., dissenting, by striking out the court's findings with regard to the interest of said children and grandchildren of the predeceased son of decedent's cousin, Harvey A. Dwight, and the predeceased great-granddaughter of George W. Pratt, and affirmed the court's decision as to the other questions decided.

The decree of the Appellate Division was modified (262 N. Y. 284).

Notice of motion was made by Taylor, Blanc, Capron & Marsh, attorneys for Herwarth Von der Decken; by Wiswall, Walton, Wood & MacAffer, attorneys for Harvey A. Dwight and others; by William S. Siemon, attorney for Eleanor H. Marihugh and others, returnable September 12, 1933, for an allowance of counsel fees by this court upon the decree to be entered upon the order of the Appellate Division and the decree to be entered upon the remittitur from the Court of Appeals.

On the return day counsel appeared and were heard in open court. Briefs were filed. Two questions are presented: (1) Has the court power under section 278 of the Surrogate's Court Act to make allowances to counsel for services rendered in the appellate courts? Opposing counsel contend that the application of the last subdivision of section 278 is limited to the initial decree of the court in a proceeding to construe a will.

(2) If such power exists, should allowances be made to counsel for unsuccessful parties?

The court's jurisdiction with regard to costs and allowances is found in article 15 of the Surrogate's Court Act. (See § 275.)

Section 278 of the Surrogate's Court Act is divided into four parts without subdivision numbers. The first two subdivisions were part of the report of the Commission to Revise the Practice and Procedure in Surrogate's Court, made in 1914 and became section 2746 of the Surrogate's Court Act (Laws of 1914, chap. 443).

The first subdivision of the section authorizes the surrogate, upon *rendering a decree*, in his discretion to fix such a sum as he deems reasonable to be allowed as *costs to any party who has appeared* by attorney, not exceeding, where there has not been a contest, twenty-five dollars, or where there has been a contest, seventy dollars; where a trial occupies more than one day, twenty-five dollars for each additional day necessarily occupied at the trial or in preparing therefor.

The second subdivision of the section relates to *costs* allowed upon a *contested application for probate.*

The revisers in their note said: " Often the attorney who does not file objections '.succeeds ' and does the estate great good, and there should be some way to compensate him. Surrogates will not be likely to abuse this discretion."

The wording of the first subdivision was changed by chapter 527 of the Laws of 1923, in effect September 1, 1923, by inserting after the word " costs," so as to read: " to be allowed as costs to the petitioner, and to any other party who has succeeded in a contest, or whose attorney in the absence of a contest, has rendered services in the proceeding of substantial benefit, or to the estate or fund, not exceeding."

The term " costs " includes only those fees and charges, the amounts of which are fixed by statute. " Allowances " are made under discretion of the court.

The Legislature by chapter 581 of the Laws of 1925 re-enacted section 278 of the Surrogate's Court Act as it then existed with the additional part which we now call the third subdivision of section 278, in these words: " When the decree is made *after appeal*, pursuant to the direction of the appellate court, the surrogate may, in his discretion, allow to an *executor, administrator, guardian or trustee* such sum as the surrogate deems reasonable for his counsel fees and other expenses necessarily incurred on such appeal."

It would appear that it was the legislative intent in 1925 to create a method of *allowances* to *fiduciaries* when the surrogate's decree is made " *after appeal.*"

The Legislature by chapter 702 of the Laws of 1928 amended the Surrogate's Court Act generally. It included an amendment to section 278. It re-enacted all of section 278 that had been the law prior to the amendment with the additional last subdivision as now existing in the section, to wit: when the decree is made in a proceeding to *construe a will*, the surrogate may, in his discretion, allow to a fiduciary " *or any party to said proceeding*, such sum as the surrogate deems reasonable for his counsel fees and other expenses necessarily incurred in such a proceeding, and the decree may direct payment to the attorney for whose services such allowance is made."

It is argued by counsel opposing the motions that the power of the court to make allowances is limited to its *first decree* in the proceeding; that the court could only make allowances based upon subsequent decrees in the proceeding to an executor, administrator, guardian or trustee, pursuant to the third subdivision of section 278.

The amendment of 1928, the last subdivision of section 278, is limited to cases construing wills. In a proceeding to *construe a will* allowances may be made to fiduciaries or *any party to said proceeding*. The amendment was enacted to fit the circumstances that existed prior thereto, *i. e.*, the lack of power of the court to grant allowances to *any party* to such a proceeding. Nothing is said in the amendment about whether or not the decree is made before or after an appeal. Nothing is said as to whether or not the parties shall succeed. That is left to the court's discretion. If the subdivision of 1928 does not mean just what it says, there would be no justification for its adoption. If proceedings to construe wills had been contemplated by the prior subdivision, there would be no reason for its enactment. The contention of opposing counsel seeks to ascribe to the Legislature the performance of a futile act.

The four subdivisions of section 278 are separate and apart, distinct one from the other. The first relates to the allowance as *costs*. The second relates to *costs* upon a *contested probate* of a will. The third relates to an allowance to a *fiduciary* when the surrogate's decree is made *after appeal*. The fourth permits an allowance when the decree is made in a proceeding to *construe a will*, and it may be made to a fiduciary, or *any party* to the proceeding.

There is a clear distinction between the character of legal proceedings which permit the application of subdivisions 1 and 2 of section 278, and the proceedings to construe wills as mentioned in the fourth subdivision of section 278, and the Legislature has plainly recognized it.

It is a well-known principle of construction of statutes that, where a general intent is expressed in an act and the act also expresses a particular intention incompatible with the broad intention, the particular is considered in the nature of an exception. (*Hoey* v. *Gilroy*, 129 N. Y. 132, 138; *Wormser* v. *Brown*, 149 id. 163; *Schieffelin* v. *Leary*, 219 App. Div. 660, 665.)

Section 54 of General Rules Relating to Statutes and Statutory Construction* says: " the legislative intent is to be determined primarily from the language used in the act, read in connection with the canons of interpretation and surrounding circumstances. The language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction. Words of ordinary import receive their understood meaning, * * * the Legislature is presumed to mean what it says; and, if there is no ambiguity in the act, it is generally construed according to its plain terms."

Section 55 relates to statutes too clear for construction. " Some statutes are framed in language so plain that an attempt to construe them is superfluous."

The fact that the whole of section 278 was re-enacted in 1928 means nothing. The subdivisions were not numbered. It is the legislative custom and practice to re-enact existing sections whenever the section is to be amended and it is not subdivided with numbers.

When the surrogate makes an allowance upon the first decree, it is impossible to speculate as to the future results of the law-suit. As the law stood prior to 1928 an attorney representing parties brought in on a construction proceeding, even if successful, could not be paid by any statute law. That was also true prior to the enactment of section 231-a on facts as stated in that section. The reason for section 231-a is this: The surrogates were confronted with cases, for instance, where ultimate remaindermen, poor in pocket, sought to protect their remainder interests through a proceeding to bring back into the estate what they claimed had been taken from it.

The power of the court in construction proceedings was still questionable, and the reason for the enactment of the amendment of 1928 was to make it clear that the surrogate could make an allowance to *any party* to the proceeding whenever a decree is made, before or after appeal, in the exercise of his discretion.

In *Matter of Reimers* (261 N. Y. 337 [Apr. 1933]) Judge CRANE, writing with reference to section 278 of the Surrogate's Court Act, reversed the ruling of the Appellate Division in its construction

---

* McKinney's Consolidated Laws, vol. 1, p. 111.

of section 278 and said: " This we think is too narrow a view to take of that *liberalizing* provision " (italics mine). Judge CRANE's statement is borne out by the facts. The last subdivision of section 278 was in effect March 28, 1928. The same Legislature enacted section 279-a, in effect March 21, 1928, in these liberalizing words: " Nothing contained in this article shall affect the right " of a *fiduciary* to pay for proper " legal expenses rendered to him incurred in *any proceeding* in the surrogate's court in excess of costs and allowances as costs."

Reading these two amendments together, being parts of the same article of the Surrogate's Court Act, it is clear it was the intent of the Legislature to liberalize the law providing for allowances to attorneys.

The first decree of the court and the subsequent decrees to be entered upon the remittiturs of the Appellate Division and the Court of Appeals are all decrees of the court in the proceeding. The order of the Appellate Division dated February 10, 1933, says: " Further ordered that the proceeding is remitted to the Surrogate to make a *decree* accordingly." (See Civ. Prac. Act, § 633.) The Court of Appeals remitted it to the Surrogate's Court, there to be proceeded upon according to law, which, of course, means a decree to be signed by the surrogate carrying out the decision of the Court of Appeals. (See Civ. Prac. Act, § 606.)

Section 78 of the Surrogate's Court Act: " Definition of decree and order. * * * The determination of the rights of the parties to a special proceeding in a surrogate's court, is a decree."

Section 80 of the Surrogate's Court Act: " Force and effect of a decree of surrogate's court. Every decree of a surrogate's court is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained."

" What is true of expenses in the court of first instance must be true, and for like reasons, of expenses on appeal. The appeal is a *continuation* or *extension* of the proceeding in the court below." (*Matter of Hidden*, 243 N. Y. 499, 517.)

A decree is the judicial decision of a litigated cause by a court of equity. (1 Bouvier Law Dict. 802.) Decrees are either interlocutory or final. Section 278 of the Surrogate's Court Act does not refer to either, but uses the word " decree " in its largest and fullest aspect.

The argument of counsel that the proposed decrees now presented to this court are not decrees contemplated by section 278, is refuted by the words of the legislative body itself when, in the third subdivision, it designates the kind of instrument now before

the court for signature, *i. e.*, the proposed decree, as a decree in these words: "When the decree is made after appeal." These instruments or proposed decrees are not before me now to resettle a prior decree.

The court has not overlooked the decision in *Matter of Lydig* by the learned Surrogate FOLEY (149 Misc. 598).

I conclude that the court has power to make allowances to counsel in the instant case.

Did the parties applying herein, or their attorneys, contribute something for the benefit of the trust estate?

The children and grandchildren of predeceased cousins contended for about $150,000, the balance of the trust passing to surviving cousins without contest. A like question would have been presented when other trusts, each involving a million dollars, fell in, the same parties being interested in these trusts.

Those who failed in the contest in the appellate courts were not interlopers. They did not seek to become parties. They were not petitioners. The trustees sought the construction of the words of the will. The parties were cited to appear. An intricate and involved question of law was presented. The parties brought in had a possible substantial interest in the estate. The Appellate Division held that the remainders were contingent. The Court of Appeals modified this decision.

The surrogate decided that Harvey A. Dwight and Jessie R. Dwight Orage could together take an equal share in the remainder of the trust fund herein accounted for, and that Herwarth Von der Decken and Elisabeth Grafin Finck von Finckenstein together take another equal share in said remainder. The appellate courts disagreed.

The second question related to whether the estate of the life tenant should participate in the division of the fund. The surrogate held that the estate of John Watson Dwight, the life tenant, takes an equal share. With regard to this question the appellate courts concurred.

The third question related to the paying over of accumulated income. With this decision the appellate courts concurred.

Upon the appeals to the Appellate Division and the Court of Appeals arguments were had in both courts and extensive and learned briefs were prepared and filed, and much time was spent in preparing the memoranda of law.

*Matter of Mahlstedt* (234 App. Div. 891), decided by a court divided three to two, is not in point because the decree of the Surrogate's Court was made *before an appeal*, and the reasons given, (1) that the *petitioner* was not successful, and (2) that the

services were not beneficial to the estate, do not apply in the instant case.

In *Matter of Ahrens* (203 App. Div. 30 [Oct. 1922]) the Appellate Division, Fourth Department, writing through Mr. Justice Rowland L. Davis, now sitting in the Second Department, with reference to the success or non-success of parties in a proceeding to construe a will, states: " They were brought into court upon citation, and did not resist the claim that there should be a judicial interpretation. The parties had divergent views as to the legal effect of the will, otherwise, there would have been no need for judicial construction. * * * the estate and the surrogate were aided by counsel by * * * the production of evidence, argument and the presentation of briefs in having a deliberate construction of the will. The surrogate, under such circumstances, may not adopt completely the views of any party, but the fact that a party so invited into court to present his views fails to impress them upon the mind of the surrogate does not necessarily *make him an unsuccessful contestant.*"

Writing with regard to paragraph 2 of section 278 of the Surrogate's Court Act — a will contest — Chief Judge Cardozo said in *Matter of Staiger* (249 N. Y. 229, 234): " Not the outcome of the contest, but the good faith of the proponent is the statutory standard." There, as here, the parties had a right to be in court and in good faith attended unto the court of last resort. A true analogy. Success or non-success is not the test to be used by the courts in the exercise of their discretion.

In *Matter of Billings* (141 Misc. 84 [1931]) the learned surrogate of Clinton county writes a most illuminating opinion dealing with this question. This case was one to construe a will. Counsel for a legatee whose legacies under the sixth and seventh paragraphs of the will had been questioned, sought an allowance for himself and associate counsel pursuant to section 278 of the Surrogate's Court Act. Paragraph sixth of decedent's will was held to be void and the estate passing under such paragraph to become part of the residuary estate instead of passing to the legatee. With regard to this, the legatee was unsuccessful. With reference to paragraph seventh, the construction was in favor of the legatee. In that case the question came up, should allowance for counsel fees be made? It was contended that no such allowance should be made unless it be shown that the services for which the allowance was sought were beneficial to the estate.

The surrogate referred to the fact that section 231-a had become effective some years prior to the amendment of section 278 as made in 1928, and it should, therefore, be apparent that the

amendment to section 278 was not intended to be construed in the same manner as section 231-a of the Surrogate's Court Act. Otherwise, there would have been no necessity for amending section 278. He said: "Why a special ruling should apply in cases of proceedings to construe wills is not made known. I can well see how such an exception should be made. The intent of the testator relative to the provisions of his will must be made clear to all interested parties before the same can be made effective. In a proceeding to construe a will the representative of the estate is as much interested as are the beneficiaries therein mentioned." (See *Matter of O'Brien*, 146 Misc. 555, 557.)

In the instant case the will was ambiguous, the interests were large, and the judicial determination to make plain the instrument, which the testatrix failed to do, was obviously for the benefit of the estate or fund and of all the parties to the proceeding.

A charge may well be made against the trust fund because the result of the proceeding benefits the estate to the extent of determining questionable matters of great importance. Of course, in some cases, the contention of the representatives of an estate will be upheld and others denied. It depends upon the facts of each case. It was the legislative intent to permit the surrogate to make allowances in his discretion upon the facts of each case. His discretion is subject to review if so manifestly wrong as to indicate abuse of power. (*Matter of Selleck*, 111 N. Y. 284; *Matter of Staiger, supra*, at p. 235.)

William S. Siemon, attorney for Eleanor H. Marihugh, was successful in his contention with regard to all three questions submitted to the court. In the exercise of the court's discretion, $5,000 is allowed to William S. Siemon as such attorney.

Wiswall, Walton, Wood & MacAffer were attorneys for three of those contending for an interest in the trust fund, and were unsuccessful. Because of the benefit which the trust fund derived from the solution of the question presented and in the exercise of the court's discretion, allowance of $5,000 is made to Wiswall, Walton, Wood & MacAffer.

To Taylor, Blanc, Capron & Marsh, attorneys for another of the parties who contended for a portion of the trust fund, the sum of $4,000 is allowed.

Proceed accordingly.