John Foster DULLES, Edward H. Green and Eustace Seligman, as and only as Executors of the Last Will and Testament of William Nelson Cromwell, deceased, Plaintiffs,

v.

James W. JOHNSON, formerly Collector of Internal Revenue for the Third District of New York, and Bruce E. Lambert, acting Collector of Internal Revenue for the Third District of New York, Defendants.

United States District Court
S. D. New York.
Sept. 30, 1957.

Sullivan & Cromwell, New York City, for plaintiffs.

Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City, for defendants.

Miriam R. Goldman, Foster Bam, Asst. U. S. Attys., New York City, of counsel.

NOONAN, District Judge.

This case was tried before the court sitting without a jury. The evidence presented consists of two printed stipulations marked plaintiffs' exhibits Nos. 1 and 2 respectively.

Plaintiffs' exhibit No. 1 is a 179 page stipulation and an exhibit annexed thereto, which exhibit is conceded to be a true copy of the Last Will and Testament of the decedent. Plaintiffs' exhibit No. 2 is a supplemental stipulation. The various matters stipulated in the two exhibits are set forth therein in outline form, and are also numbered consecutively. Stipulated facts numbered 1 through 312 are set forth in plaintiffs' Exhibit No. 1; those numbered 313 through 321 are set forth in plaintiffs' Exhibit 2. In the interests of clarity and brevity, the court will adopt those numbers wherever necessary.

The decedent died on July 19, 1948, and his Will was admitted to Probate on September 10, 1948. Suit was brought by the executors of the decedent's estate under the provisions of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 1 et seq., seeking a refund plus interest on a principal amount of $2,132,282.63 in estate taxes paid by them pursuant to direction of the Commissioner of Internal Revenue, refund of which amounts the Commissioner has disallowed upon their claims for such refund. Plaintiffs assert that the amounts in controversy were erroneously and illegally collected. This opinion is rendered in lieu of formal Findings of Fact and Conclusions of Law.

In a 146 paragraph complaint, (amended by stipulation between the parties and order of the court) the plaintiffs set forth fifteen causes of action, the determination of all of which hinges on the court's disposition of certain issues arising under Articles "Eighth" and "Thirteenth" of the Will here involved.

Basically, these issues are the deductibility of certain bequests, and of certain expenses incurred in connection with the administration of the decedent's estate.

The stipulated facts to which reference was made above are deemed incorporated herein for the purposes of this opinion.

The specific bequests which the plaintiffs assert (and the defendants deny) to be deductible from the decedent's gross estate in determining the decedent's net taxable estate, the determination of the amount of the charitable deduction properly allowable to this estate, and the deductibility of certain funeral expenses, amounts paid by the executors out of the estate pursuant to an order of the state court, and other alleged miscellaneous administration expenses, are all governed by interpretation of portions of Section 812 of the 1939 Code as amended.

The first specific point urged by the plaintiffs is that certain portions of the estate which were willed to the New York County Lawyers' Association, The Association of the Bar of the City of New York, and the New York State Bar Association are deductible under the provisions of Section 812(d) in determining the decedent's net taxable estate.

The deductibility provided by that subsection applies to "Transfers for Public, Charitable, and Religious Uses", and specifies that such bequests to be deductible must be:

"to or for the use of any corporation organized and operated exclusively for * * * charitable, scientific, literary or educational purposes, * * * no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation * * *".

Thus there are three primary indicia set forth: the purpose for which the organization was organized, the manner in which it is operated, and that no substantial part of its activities is made up of attempts to influence legislation.

In its certificate of incorporation the New York County Lawyers Association lists as its purposes:

" * * * the cultivation of the science of jurisprudence; the promotion of reforms in the law; the

facilitation of the administration of justice; the elevation of the standards of integrity, honor and courtesy in the legal profession; the cherishing of the spirit of brotherhood among members of said Association."

The Association of the Bar. of the City of New York was incorporated on April 28, 1871, by an Act of the New York State Legislature (Chapter 819 of the Laws of 1871, subsequently amended by Chapter 134 of the Laws of 1924). Section 1 of that Act sets forth the purposes of the Association in language virtually identical to that quoted in connection with the New York County Lawyers' Association.

Equally similar is the verbiage governing the purposes of organization set forth in Sec. 1 of the Act of the New York State Legislature incorporating the New York State Bar Association (Chapter 210 of the Laws of 1877).

On their faces therefore, the sets of articles of incorporation indicate that none of the three organizations was organized exclusively for charitable, scientific, literary, or educational purposes. Further, it is clear that one of the purposes of each of them was the "promotion of reforms in the law". This would suggest that one of the purposes of organization was "attempting to influence legislation."

■ While the articles of incorporation are not the exclusive indicia of the purposes of an organization, they are certainly some evidence of those purposes. Sun-Herald Corporation v. Duggan, 2 Cir., 73 F.2d 298, as subsequently modified in Roche's Beach, Inc. v. Commissioner, 2 Cir., 96 F.2d 776. Also see Sun-Herald Corporation v. Duggan, 2 Cir., 160 F.2d 475.

■ Further evidence pertaining to these purposes may be drawn from the characterizations of the organizations in the state of their incorporation, no clear federal characterization having been made. United States v. Proprietors of Social Law Library, 1 Cir., 102 F.2d 481.

The later decision in the case of Hassett v. Associated Hospital Service Corp., 1 Cir., 125 F.2d 611, does not prevent the state court's judicial analysis of the facts pertaining to a particular organization of that state from being worthy of some weight in determining the character of that organization for federal estate tax purposes.

The Brooklyn Bar Association, in a suit brought by an employee, claimed exemption from payment of a state unemployment tax by virtue of the wording of the statute [formerly New York Labor Law, Sec. 502, subd. 3(d); now New York Labor Law, McKinney's Consol.Laws, c. 31, Sec. 560(4)] exempting employer corporations "organized and operated exclusively for religious, charitable, scientific, literary or educational purposes." The Brooklyn Bar Association's certificate of incorporation cited the same purposes of organization as were cited by those corporations which we are called upon to characterize in this case.

In that case, a referee held that the association was not exempt, the referee's decision was affirmed by the Unemployment Insurance Appeal Board, and the Board's decision was appealed to the Appellate Division of the New York State Supreme Court.

In affirming the decision of the Board, the court stated:

"Among the activities of appellant are rendering legal aid to the poor, conducting public radio broadcasts, providing public lectures on legal and other public questions, examination and making recommendations on proposed legislation, contributing to the Joint Conference on Legal Education, hearing and prosecution of grievances against members of the bar, assisting in the arbitration of disputes, conducting a library for the use of the profession, examination into the unlawful practice of the law, conducting of memorials for members of the bench and bar, providing entertainment for its own members, giving an an-

nual dinner, conducting golf tournaments for its members, holding mock trials, maintenance of an association house for the use of its members and the like.

"While many of the appellant's activities are commendable and of an educational, scientific or charitable nature, it cannot be said that it was organized and is being operated solely for the purposes which under the statute would entitle it to exemption."

Smith v. Brooklyn Bar Association, 266 App.Div. 1038, 44 N.Y.S.2d 620, 621, unanimously affirmed claim of Smith, 292 N.Y. 593, 55 N.E.2d 368.

■ While it is true that that case arose under the unemployment insurance law, and that public policy requires that exemption from such a law be narrowly construed, the rules of statutory construction also require that in tax cases, where the legislative intent is not clear, "(d)eductions claimed must fall within one of the several classes of deductions specifically enumerated in, and must meet all applicable requirements of, the statute." Federal Estate and Gift Taxation, by Randolph E. Paul, Vol. I, Sec. 11.02. See also Helvering v. Ohio Leather Co., 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113; Equitable Life Assur. Society v. Commissioner, 321 U.S. 560, 64 S.Ct. 722, 88 L.Ed. 927 rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593; Washington Chapter of American Institute of Banking v. District of Columbia, 92 U.S.App.D.C. 139, 203 F.2d 68.

■ Conceding that bequests qualifying as charitable deductions should be given a more liberal construction than applicable to other bequests for purposes of deduction, because of public policy, the reason for such liberality does not exist unless the bequests are to organizations which in fact are charitable in nature, and in this portion of the suit, the character of these organizations is the main issue.

■ The court recognizes that the phrase "organized and operated" as used in the statute, is a clear indication that the purposes of the organizations should also be examined in the light of their actual operations, and not limited to the intent expressed in the articles of incorporation. Furthermore, the word "exclusively" should be given a liberal construction. In this case, however, regardless of the weakening of the "exclusively", analyses of the operations themselves give ample evidence that the wording used in the articles of incorporation clearly is reflected in the operation of all of the corporations. The stipulated facts indicate that the bulk of the activities of the organizations are beyond the statutory limits set by the deduction clause; examples of such activities are found in stipulated facts numbered 31(1), (2), (6), (8), (11), (15), (16), (22) through (25), (27), (28), (30), (34) and (35); 33(3); 60; 61; 128(5) through (8), (16), (17), (21), (23), (28), (29), (32), (34), (36), (37), (39), (40), (41); 130; 162; 165; 167; 168; 222(19), (26), (27), (31), (40) and (48); and 224.

Many of the above enumerated examples of the operations of the three organizations serve not only to indicate that the organization as well as the operation of these corporations is beyond the pale of the delimiting provisions contained in Sec. 812(d), but also to highlight that a "substantial part of the activities" of the corporations is "attempting, to influence legislation". The wording of the statute indicates that such attempts need not be limited to "propaganda."

The court concludes that the organizations exist primarily to benefit members of the legal profession, and to provide a method whereby their views and recommendations as a body on legislation of various kinds is made known to the legislators. Such activities go well beyond education and the mere expressions of opinions.

While a considerable part of their purposes and operations are charitable, scientific, literary and/or educational, the

court feels that this does not reflect the basic character of the corporations.

In Better Business Bureau v. U. S., 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67, a case distinguishable on its facts, but the logic of which is nevertheless pertinent, the court stated:

"Even the most liberal of constructions does not mean that statutory words and phrases are to be given unusual or tortured meanings unjustified by legislative intent or that express limitations on such an exemption are to be ignored."

While the court is impressed by the arguments to the contrary, it nonetheless is of the opinion that the three bar associations are not organized and operated exclusively for charitable, educational, literary or scientific purposes within the meaning of Sec. 812(d), and that they do not meet all of that section's requisite criteria.

Thus the bequests to those associations are not deductible from the decedent's gross estate in computing his net estate for federal estate tax purposes.

Plaintiffs' second point is that the bequest to the Association of the Bar of the City of New York is a gift in trust for educational purposes and is deductible from the decedent's gross estate under Sec. 812(d).

The now pertinent part of that Section provides deductions for the amount of bequests:

"* * * to a trustee or trustees * * * but only if such contributions or gifts are to be used by such trustee or trustees * * * exclusively for religious, charitable, scientific, literary, or educational purposes * * * and no substantial part of the activities * * * is carrying on propaganda, or otherwise attempting, to influence legislation * * *".

The wording of this particular bequest is "To The Association of the Bar of the City of New York, for its library and for research and exposition in law, and for other legal purposes."

The court is of the opinion that, since the bequest is not to a trust or trustees, nor for a clearly limited purpose, and since the court has determined that the Bar Association concerned is not a "charitable" corporation within the purview of Sec. 812(d), the bequest is not deductible from the decedent's gross estate in computing his net estate for federal estate tax purposes.

Plaintiffs' third point involves a bequest "To The William Nelson Cromwell Foundation for Research of the Law and Legal History of the Colonial Period of the United States of America; a Museum and other matters of a Legal Nature * * *". The plaintiffs assert that the bequest is deductible in determining the decedent's net taxable estate under Sec. 812(d).

The pertinent portion of that section has been quoted in the court's determination of the preceding point.

The Foundation, established by the decedent in 1930 as a trust under New York law, is described by the Indenture of Trust set out in paragraph 284 of the stipulation. Up to the time of the death of the decedent, there had been contributed only an initial $150,000 to the Foundation. Of this amount, the only expenditures of the Foundation were several semi-annual contributions of $1,500 to the New York County Lawyers' Association for library use exclusively.

Up to this point, in a case where the court is required to determine whether the various shades of grey before it are either black or white, logic (there is no real precedent) seems to have favored the defendants. But on this point, the court does not agree with the defendants' contentions that the Foundation was not created for charitable, scientific, literary or educational purposes.

The only evidence of the character of the trust is the Indenture and the expenditures. The latter have all been for library purposes. The former is summarized in Article Second thereof as

having ten main purposes. Of these the defendants concede that purposes 2 and 6 are educational in character and that 1 and 5 are "arguably educational." The court sees nothing "arguable" in these two purposes. They are educational.

Of the remaining six, the defendants contend that three and four "apparently authorize political agitation", and that 7 through 10 seek to enhance the prestige of the New York County Lawyers' Association and to encourage fellowship between that association and the Bar in general, and hence make the bequest to the Foundation non-deductible.

Purpose three is "Improvement in the Law" and "cooperation with the Judiciary"; purpose four is elevation of the standards of admission to the Bar and of the practice of Law; purpose seven is to increase the Library of the New York County Lawyers' Association; purpose eight is collection of likenesses of prominent lawyers, and works of art to decorate the building; purpose nine provides for a legal history of the New York County Lawyers' Association; and purpose ten, in general, is to promote fellowship among the Bar for the good of all.

■ Apart from the fact that these purposes, by themselves, do not clearly disqualify the Foundation, the fact remains that where a trust is involved, the "organization" thereof is not an important criterion. Rather the requirement is that the contributions are to be used for literary or educational purposes. The only expenditures of money by the Foundation, prior to the drawing of the will, from the date of the execution of the will to the date of the decedent's death, and even after the decedent's death, have been for Library purposes alone.

■ The court concludes therefore that the bequest to the Foundation is deductible from the decedent's gross estate in computing his net taxable estate pursuant to Sec. 812(d).

The plaintiffs' fourth contention is that bequests which failed, and which had to be reallocated among certain specified beneficiaries by the executors, and which were reallocated to a charitable organization, are deductible in computing the net taxable estate under Sec. 812.

■ Certain named beneficiaries having been found by the Surrogate's Court to be ineligible to take the bequests, those bequests had to be reallocated among other listed beneficiaries (the list of which contained the organizations already discussed). The bequests ultimately were reallocated to the Trustees of Columbia University. Discretion rested with the executors subject to the limitations that the recipient must be among those listed in Article Eighth of the Will, and could not be the Pension Fund of Sullivan & Cromwell named therein. However, where the executors have clear discretion to divert a bequest to a non-charitable object, the deduction should be denied. Burdick v. Commissioner, 2 Cir., 117 F.2d 972, certiorari denied 314 U.S. 631, 62 S.Ct. 63, 86 L.Ed. 506; Treasury Regulations 105, Sec. 81.46, 26 C.F.R. 81.46.

In view of the inclusion in the list of possible beneficiaries of the three named bar associations and the court's determination of their non-charitable character, it is the opinion of the court that the Commissioner did not err in ruling that at the death of the testator the possibility that charity would not take in this case was not to remote as to be negligible.

"It is well settled that where a third party has a power to divert gifts from charitable to non-charitable objects the gifts are not deductible even though the power of diversion shall never be exercised." Commissioner of Internal Revenue v. Macaulay's Estate, 2 Cir., 150 F.2d 847, 851.

Therefore the five parts of the decedent's residuary estate which ultimately were reallocated to the Trustees of Columbia University were not deductible in computing the decedent's net taxable estate.

The next point raised by the plaintiffs is the formula to be used in determining the charitable deduction allowable to the decedent's estate under Sec. 812(d).

The Commissioner included in his computation of the net taxable estate that portion of the residuary estate which would have gone to charity (but did not) had it not been used for payment of the federal estate tax.

The plaintiffs urge that this amounts to a tax on a tax, but they can find no precedent for substituting their formula for that customarily used by the Commissioner. Clearly this is a question of Congressional intent, but there is no indication of what that intent might be.

The court finds no reason to substitute the plaintiffs' formula for that which the Commissioner used for many years. If Congress felt that the formula being used was not in accord with its intent, it had ample opportunity to clarify that intent.

The next point urged by the plaintiffs is that all of the funeral and miscellaneous administration expenses paid by the executors out of the estate should be deductible in determining the decedent's net taxable estate under Sec. 812(b), but that the Commissioner has not allowed their claims in this respect.

The pertinent facts in connection with this point are set forth in the stipulation as numbers 307 through 312.

There is no reason apparent to this court why these expenses should not have been allowed. The court therefore rules that they are deductible under Sec. 812(b).

The last point raised by the plaintiffs is that certain expenses amounting to fees paid to lawyers representing certain legatees, which fees were paid by order of a state court, should be classified as administration expenses and be deductible under Sec. 812(b) in determining the decedent's net taxable estate.

The facts in this regard are set out in numbers 313 through 321 in the Supplemental Stipulation.

Briefly the executors were required to commence a proceeding in the New York Surrogate's Court to obtain rulings on certain provisions of the will. As a result of these proceedings, the court directed the executors to pay certain counsel fees and disbursements to counsel for one of the legatees.

The defendants deny that such expenses are proper expenses of administration under Sec. 812(b). They base their denial in part on Treasury Regulations 105, Sec. 81.32 and Sec. 81.34(c), preventing deduction of legal fees for services rendered which were merely of value to individual legatees, and not essential to the proper settlement of the estate.

The decedent having died a resident of New York State, and the will having been probated therein, the allowances awarded by the Surrogate presumably were made in accordance with New York law (Sec. 278 of the Surrogate's Court Act). Such awards are not made unless the recipients thereof are found to have contributed something of benefit to the estate.

Appropriately, in In re Watson's Will, 149 Misc. 235, 244, 267 N.Y.S. 373, 383, the Surrogate commented in part:

"In the instant case the will was ambiguous, the interests were large, and the judicial determination to make plain the instrument, which the testatrix failed to do, was obviously for the benefit of the estate or fund and of all the parties to the proceeding.

"A charge may well be made against the trust fund because the result of the proceeding benefits the estate to the extent of determining questionable matters of great importance. Of course, in some cases, the contention of the representatives of an estate will be upheld and others denied. It depends upon the facts of each case. It was the legislative intent to permit the surrogate to make allowances in his discretion upon the facts of each case."

At the conclusion of the Surrogate's opinion above, he awarded allowances to counsel "(b)ecause of the benefit which the trust fund derived from the solution of the question presented * * *".

In the instant case, the proceedings to determine eligibility of Russian War Relief, Inc. and the allocation of taxes among charitable and non-charitable residuary legatees, directly involved the question of how much the executors should pay out of the estate to residuary legatees. These substantial questions had to be resolved.

Accordingly, the resultant expenses (awards of fees and disbursements) were "actually and necessarily incurred in the administration of the estate". The expenses were essential to the proper settlement of the estate and were not incurred for the individual benefit of the legatees.

Therefore, it is the opinion of the court that these expenses are deductible in determining the decedent's net taxable estate pursuant to Sec. 812(b).

Settle judgment in accordance with the foregoing.